TEXAS & PACIFIC COAL COMPANY v. FRANK KOWSIKOWSIKI.

No. 2015. Decided February 16, 1910.

**1.—Master and Servant—Negligence—Res Ipsa Loquitur.**

The occurrence of an accident such as in the ordinary course of things does not happen without negligence, as the derailment of cars, affords evidence of negligence; but it does not establish negligence of the defendant where the particular thing causing the accident was not under his exclusive management and control, but was wholly or partially under that of the injured party, his servant. (Pp. 174, 175).

**2.—Same—Case Stated.**

A servant, employed in a coal mine, was killed by the derailment of coal cars at a switch; it was his business to turn this by hand and to give proper signals in order to control the movement of the cars and their direction on to the proper track; he was seen on their approach pounding with a rock upon the switch point, which was apparently out of order, then to throw down the rock and jump out of the way of the approaching cars which he would have escaped but for the derailment. There was no proof as to the nature of the defect in the switch, or that it had failed to work before. Held, that the evidence, while sufficient to raise an inference of negligence, failed to show that the fault was attributable to the master rather than to the servant and did not support a recovery for his death. (Pp. 173–175).

Error to the Court of Civil Appeals for the Second District in an appeal from Palo Pinto County.

*John W. Wray,* for plaintiff in error.

*W. P. Gibbs, Albert Stevenson* and *E. B. Ritchie,* for defendant in error.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This is a judgment rendered in favor of defendant in error for damages sustained by him from the death of his son, Mike Kowsikowsiki. The facts are thus stated by the Court of Civil Appeals:

"The deceased was engaged as a trapper in one of appellant's coal mines at Thurber. The coal as mined was loaded on cars drawn by an electric motor operated by a motorman along lateral tunnels and thence along main tunnels which terminated at the hoisting point where the loaded cars were taken to the surface, unloaded, and returned. The deceased was employed in the north main entry which extends north and south. From this main entry along each side there were a number of lateral tunnels, and it was the duty of deceased, who was but about sixteen years old, among other things, to observe approaching trains, to arrange the switches to and from the laterals, and see that no train from a lateral was allowed to enter the main tunnel while a train on the main tunnel was running or about to run to or from the hoisting point. The switches were constructed of adjustable iron points some eighteen inches or two feet long, fastened at the larger end on the inner sides of the main track by a rod or spike driven into the wooden cross ties. The points were loose and adjusted to the rails, working on the rod or spike as a pivot, by the hand of the trapper so as to keep the main track clear

or to admit of an entrance from the laterals, as the occasion should require. At the time in question the deceased was at the junction of the main entry and the third lateral tunnel on the west. On the lateral track a train of coal cars had approached and stopped within about six feet of the main track. At the southern terminus of the main entry, some three or four hundred feet away, a train of coal cars was starting for the hoisting point. The deceased was observed doing something with the switch point that was adjustable to the east rail of the main track. It must have been defective or out of order in some way, as the deceased after pounding or striking upon it several times with a rock or something picked it up and dropped it in the middle of the track, then hurriedly turned to the west and endeavored to do something, not shown by the evidence, with the west switch point, when to avoid the approaching train from the south he jumped to the west at or near the front of the motor car standing on the lateral. He would thus have escaped injury but for the fact that the train on the main line was derailed at this point and the deceased was caught between the two motors and so injured that he died. The evidence fails to show affirmatively what, if anything, was wrong with the west switch point, or how long the east switch point had been out of order, or whether report of any defect had ever been made to the mine boss whose duty it was to repair. It also fails to so show the speed of the train on the main track save that the only eye witness who testified said: 'He come pretty quick.' Nor does it affirmatively appear whether the deceased gave any signal, or whether the train on the main track gave any warning of its approach."

The Court of Civil Appeals, in affirming the judgment based upon these facts, thought it was warranted by the principle stated in the case of Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314, and in other cases, as follows:

"Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose for want of care."

This would probably be an eminently just conclusion, if the assumption upon which it is founded were just, viz.; that the evidence shows that the particular thing which caused the death in question was under the exclusive management and control of the defendant. The derailment of the car, unexplained, is a fact which by its very nature may be admitted to suggest something amiss, a want of proper precaution somewhere. But what was the cause of the derailment? Until we can answer that question, we think it must be admitted that it is not shown by the evidence that the particular thing which caused this injury was in the exclusive management of the defendant. If everything that could reasonably be assigned as the cause of the derailment had been wholly under the control of servants of defendant other than the deceased himself, it might be inferred that the cause, whatever it was, consisted in some negligent act or omis-

sion of theirs. But we have a track, with its switches, and a motor car, defects in or negligent management of any of which might .have brought about that which happened. . The deceased, himself, had a hand in the management of the switches and also in controlling the movements of the car insofar as it depended on the giving of signals. Negligence is not to be imputed either to him or to the defendant's other servants without proof; and a state of facts in which the cause of the accident can not be found does not warrant a conclusion that one rather than the other, produced it. We can not presume in favor of one and against the other. Evidence must be brought by a plaintiff, having the burden of proof, sufficient to justify an inference of negligence on the part of the defendant, and none such can be drawn from an occurrence which, while indicating negligence somewhere, is as consistent with the hypothesis that it was his own or that of one in whose right he sues, as that it was that of the other party.

It is said by the Court of Civil Appeals that the action of deceased with reference to the east switch point shows that it was defective or out of order in some way. All that his action indicates is that the switch point did not work, as it should have done at that time. Does that justify an inference of negligence on the part of the defendant? Is it not the reasonable inference that the switch had been satisfactory up to that moment? The cars were constantly passing over it, and it appears that, if one of these simple contrivances became defective all that it was necessary to do to have it put in order at once was for one of the motormen to notify the boss, which any of them would do upon being informed of the necessity by the trapper. No one can say from this evidence, therefore, that this switch point had ever failed ·to work properly except at the moment before the derailment came, or that, if it had done so, the deceased ought not to have called attention to the fact. Besides there is an utter absence of evidence that any supposed condition of the switch contributed in any way to the derailment.

Again it is said that the defendant was in a position to clear away all these doubts. This consideration has force where a plaintiff has proved a state of facts which, while not free from question, is yet sufficient, in the absence of explanation, to give rise to an inference of negligence on the part of defendant. But it has no application where the facts shown are equally consistent, as they are in this case, with all these hypotheses, viz.: that the injury was caused (1) by the negligence of deceased, or (2) by that of defendant, or (3) by that of both deceased and defendant. 6 Thompson on Neg., sec. 7698, and cases cited. The defendant certainly is not called upon to account for the conduct of the deceased. The judgment will be reversed, but the cause will be remanded.

*Reversed and remanded.*