### SIMPSON v. DALLAS RY. & TERMINAL CO.

#### No. 12902.

Court of Civil Appeals of Texas. Dallas.

July 20, 1940.

Rehearing Denied Oct. 5, 1940.

Currie McCutcheon and Bruce Graham, both of Dallas, for appellant.

Burford, Ryburn, Hincks & Charlton and Logan Ford, all of Dallas, for appellees.

LOONEY, Justice.

Stone Simpson sued Dallas Railway & Terminal Company to recover damages for alleged personal injuries to his wife, Daisy Simpson, received while a passenger on one of defendant's street cars, as she was preparing to alight at a regular stop, by the sudden closing upon her of the rear (treadle) door of the car, catching and holding her between the door and the door facing, fracturing her collar bone, and inflicting other injuries. At the con-

clusion of the evidence, the court instructed a verdict for the defendant and, judgment having followed accordingly, plaintiff appealed.

The only question presented for our decision is whether, in view of the facts, the case should have been submitted to the jury under the doctrine of res ipsa loquitur. The facts bearing upon the question, most favorable to the plaintiff, substantially are these: The street car in question was of the one-man type, the operator and the controls located in the front end; having a treadle or folding door for the exit of passengers in the rear vestibule, that opened toward the rear, its motive power being compressed air, and was controlled as follows: The operator would place the air key or lever in what he called the "treadle-door notch", the passenger desiring to alight would step upon the treadle (about 18 inches wide and 2 feet long) in the floor of the vestibule immediately in front of the folding door, the pressure applied depressing the treadle about an inch, caused the door automatically to open and a step on the outside of the car to fold outward and down. The passenger would pass from the vestibule onto the outer step and then to the ground. The only control the operator had over the opening and closing of the door was to shift the key or lever to the treadle-door position, thus making it possible for the passenger, by stepping upon the treadle, to cause the door automatically to open. The door would not open unless the passenger stood upon, or put pressure upon the treadle, and would only close when the treadle and outer step were relieved of pressure. Once the door was opened in the manner described, there was nothing the operator could do to keep it from closing. Testifying, the operator, among other things, said: "The treadle-door was put on the street car by the street car company for the purpose of letting people get off at that back door. As far as I know, those treadle-doors never get out of fix unless they are involved in an accident and those rods get bent or sprung. I have nothing to do with reference to inspection of the cars; I only operate them. They have an inspector and he is a specialist on treadle-doors. The door will not close with a passenger standing on the step or treadle, unless there is something wrong with the door."

That plaintiff's wife was injured by the closing of the treadle-door upon her, as she was in the act of alighting from the street car, is not questioned. She testified, in part, as follows: " * * * we were just all jammed up together touching each other getting off. A big woman about my size had just gotten off in front of me. * * * I was about five or six inches behind the lady in front of me. When I stepped up on the treadle for the purpose of alighting, this colored woman ahead of me was stepping off the street car step. * * * The door came to on me when I was standing right in the door trying to step out on the step to get off the street car. There is an iron rod that goes straight up and down to hold to so you won't fall and I had hold of that with my left hand and just as I went to take my right foot and step down on the step the door came to; one foot was on the treadle and my right foot was out to step down on the step but it hadn't touched the step; my weight was on my left foot."

Daisy Simpson was corroborated by the witness Elmo Walton, another passenger, who testified: "I was on the street car when Daisy Simpson was on it. When that street car reached the intersection of Main and Hawkins I saw Daisy Simpson as she attempted to get off the car at the back at the treadle-door. Three or four got off ahead of her and as she started to get off she stepped on that treadle and the door closed and caught her between the shoulder and the other side where it comes together. I don't recall how close she was to the person in front of her, but another man was getting off behind her."

The evidence, in our opinion, would warrant the conclusion that, while the passenger was leaving the car, passing through the door just behind other passengers, left foot upon the treadle and right poised to step upon the outer step, she was struck by the door shutter, suddenly, erratically and out of time, closing upon and injuring her. Why the door behaved in this manner was not explained, nor did the defendant make any attempt at an explanation. Although we do not think it can be said that the operator was at fault, or that an imputation of negligence can be drawn from his conduct, yet that is no answer to the unanswered question— what caused the treadle-door to close upon the passenger at a time and under condi-

tions when, according to its mechanically planned operation, it should have remained open?

That it was the duty of the defendant carrier to exercise a high degree of care in respect to keeping in repair and in a safe condition its cars and operating apparatus is well-settled by the authorities; and the failure on its part to perform that duty would be negligence. The operator testified that the defendant Company had an inspector, a specialist on treadle-doors, and, further, that a door would not close with a passenger standing upon the treadle or step, unless there was something wrong with the door.

As before shown, the testimony is to the effect that, while plaintiff's wife was preparing to alight from the car, the treadle-door closed upon her while, according to her testimony and that of another witness, she was standing with left foot upon the treadle, in the act of placing her right upon the outer step. This testimony, in our opinion, would warrant the conclusion that the controls of the treadle-door were out of order, and that the closing of the door under the circumstances, unexplained, would warrant the inference of negligence.

As stated in 30 Tex.Jur. § 132, pp. 807, 808: "Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well-considered judicial opinions."

Many cases are cited by the parties, involving the doctrine of res ipsa loquitur that, beyond announcing general principles—in regard to which there can be no controversy—are of no particular value as authorities. The facts show, we think, that the defendant had exclusive control and management of its street cars and all appliances and equipment used in their operation, including the machinery and appliances controlling the treadle-door which, under certain conditions, opened and closed automatically. We think the doctrine, as applied to the facts of this case, implies that the closing of the door upon and injury to plaintiff's wife, at the time and under the circumstances revealed by the evidence, was due to some act or omission incident to the defendant's control of its own appliances, as the accident was of a nature that, ordinarily, would not have occurred if the treadle-door controls had been in good working order.

But, the defendant contends that: "The material facts are uncontroverted. Viewing the evidence in its most favorable light to plaintiff, the conclusion remains that the rear treadle-door of defendant's street car, the instrument causing injury to plaintiff's wife, if not wholly, was at least partially, under her control at the time of the accident. Under such circumstances, the doctrine of res ipsa loquitur is not applicable. Before the doctrine can be invoked it must be established as a fact that the thing which caused the injury complained of is wholly and exclusively under the management and control of the defendant." See p. 27, defendant's brief.

The vice in the proposition contended for by the defendant, in our opinion, is that it finds no proper basis in the facts. The only control exercised by the passenger over the movement of the treadle-door was to cause it to open by stepping upon the treadle; otherwise, she had no control over its movement, as it automatically closed when the passenger alighted from the step on the outside of the car. There was no connection between anything she did, omitted, or was required to do, that caused the door abruptly to close at a time and under conditions when it should have remained open.

For the reasons stated, we are of opinion that the court below erred in refusing to submit the case to the jury. Therefore, the judgment below is reversed and the cause is remanded for further proceedings.

Reversed and remanded.