**MOBIL CHEMICAL COMPANY et al., Appellants,**

**v.**

**Edward L. BELL et al., Appellees.**

**No. 7530.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 29, 1973.

Rehearing Denied Dec. 27, 1973.

Orgain, Bell & Tucker, Beaumont, for appellants.

Waldman & Smallwood, Beaumont, for appellees.

DIES, Chief Justice.

In April of 1966, C. F. Braun and Company by contract was constructing a tere-phthalic acid unit for Mobil Chemical Company. The leach section of Unit A had been completed and turned over to Mobil about two weeks prior to April 5, 1966. Braun was still in the process of constructing Unit B, and plaintiffs Edward L. Bell and J. A. Hurley were employees of Braun engaged in this work. A hydro-static test had been performed on Unit A, and on April 5, 1966, Mobil was running acetic acid for the purpose "to get it circulated, and check out the equipment in preparation of starting the unit up."

At about 4:30 p. m. on that date, acetic acid escaped from Unit A into the atmosphere, got on plaintiffs, who were working in a tower about 70 feet away, causing their injuries. They brought suit against Mobil alleging specific acts of negligence and alternatively res ipsa loquitur. A jury found that the leach section of Unit A was under the exclusive control and direction of defendant, that acetic acid was released into the air by defendant, that defendant failed to use ordinary care in the maintenance of leach Section A, and that this failure was a proximate cause of the incident.

The jury failed to find: that the defendant failed to have a pressure gauge on the leach section, or failed to close the valve of the leach section.

Judgment was given plaintiffs from which Mobil perfects this appeal. Since this appeal concerns the doctrine of res ipsa loquitur, we must first summarize the evidence concerning causation. This can be best accomplished—and perhaps only accomplished—by referring to a diagram of the section involved, which diagram we have attached to this opinion.

The acetic acid ran through the feed line so marked at the bottom of the diagram. As long as the pressure did not exceed about 850 pounds per square inch, it remained in this feed line. Knowing, however, that surges do occur in the pressure of the compound being run through the

feed line, they deliberately designed the unit so that when surges above this amount occur, the compound in the line—in this case acetic acid is bled off into a relief valve, which maintains a closed system—that is to say, the acid is prevented from emission into the atmosphere. In the case of acetic acid this is important because of danger of fire as well as its harmful effects on human beings.

Just above the feed line, please notice a pipe marked 1″ above which are two discs, so marked. These "rupture discs" are designed to rupture at about 850 psi to take the contents of the feed line in the direction of the arrows to the relief valve.

On the date above noted at about 4:30 or 5 p. m. Jerry Griffith, process superintendent of the terephthalic acid plant was in the control room of the unit when the controlman indicated to Griffith that there was an acid leak in the leach section. "I could see that a quarter inch valve was blowing acetic acid straight up in the air." He put on a mask, went out and closed the valve stopping the acid escape. He believes the valve was only open three to five minutes.

Marvin Fannin, a chemical engineer with Mobil, looked at the valve afterwards and found the pressure indicator gone, the break being marked on the attached diagram.

Both rupture discs were ruptured and later replaced. The valve, marked A on the diagram is left open, so that when the pressure discs are ruptured, this will be indicated by a reading on the pressure indicator connected to the valve (marked A). The pressure indicator is marked PI. Had this indicator been connected and held when the discs ruptured, no danger would have been presented. It would only have been a question of shutting down the unit to replace the discs. This had occurred the day before the accident.

The possible causes why the pipe broke at valve A were entirely given by Griffith and Fannin as (a) vibration, (b) metal fatigue as a result of torque, (c) defective part, (d) removal of the pressure indicator by someone, (e) "Someone didn't tighten that thing up like they should have."

Witness Fannin expressed the opinion, "[W]hat had happened, when the guy put it in, he over-tightened it," causing nipple fatigue (torque). "The guy," was presumably one of Braun's pipefitters, since they built the system.

Mobil's first point is the error of the trial court in submitting the case to the jury on the theory of liability predicated on "res ipsa" findings.

■ Under the doctrine of res ipsa loquitur, negligence may be inferred from the mere fact that an accident happened, provided that the character of the accident and the circumstance in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred. Tex. & St. Louis R'y Co. v. Suggs, 62 Tex. 323 (1884); Washington v. Missouri, K. & T. Ry. Co. of Texas, 90 Tex. 314, 38 S.W. 764 (1897); Bond v. Otis Elevator Company, 388 S. W.2d 681 (Tex.1965); Owen v. Brown, 447 S.W.2d 883 (Tex.1969); J. Weingarten, Inc. v. Gauthier, 305 S.W.2d 181 (Tex.Civ.App., Beaumont, 1957, no writ); Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659 (1935). See cases cited in 40 Tex.Jur.2d, Negligence, § 147 at 670 (1962). Also, the thing that causes the injury must be shown to have been under the management and control of the defendant, *Owen,* supra 447 S.W.2d at 886; *Bond,* supra, 388 S.W.2d at 686.

■ On the authority of *Bond,* supra, and Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968 (1944), 160 A.L. R. 1445, we believe the facts of the case do raise the doctrine of res ipsa loquitur and the court was correct in submitting it. Mobil's first point is overruled.

By its second point, Mobil complains of the "error of the trial court in entering

judgment against the defendant on the theory of liability predicated on 'res ipsa' findings." *Witchita,* supra, has been cited probably as much as any Texas case on the res ipsa doctrine. There the Court said

"It is now well settled, however, in this state that in a proper case for the application of the rule the fact of the occurrence warrants an inference of negligence, but does not compel it; that the presumption created by the happening, whether termed a presumption or an inference, is rebuttable. The effect of the application is not to shift the burden of proof to the defendant, but only the burden of going forward with the evidence." (81 S.W.2d at 664)

■ So, if in a proper case, the doctrine is invoked, and the defendant offers no proof, the doctrine prevents a directed verdict against the plaintiff. See Prosser on Torts, § 44 at 303 (1941).

But what if defendant goes forward with the evidence, presumably offers all the proof he can, and yet this proof merely raises a number of probable causes? This is far more likely to occur in these cases. If we say that the doctrine requires the defendant to explain the accident or be legally responsible, since in many cases he cannot explain, this may amount to the imposition of strict liability without fault. See Prosser on Torts, § 44 at 305. If we say that defendants' inability to explain the cause, excuses them from liability, in these cases, we have effectively eliminated the doctrine of res ipsa loquitur. And in this complex, technological age, we believe this doctrine is more needed than it was when announced.

The fair and wise solution to this dilemma is, we think, to require plaintiff to prove that it is more reasonably probable that the accident was caused by defendants' negligence, than not. See Harper and James, The Law of Torts, Vol. 2, § 19.11 at 1101 (1956).

Restatement of Torts 2d, § 328D at 159 (1965):

"The plaintiff's burden of proof requires him . . . to produce evidence which will permit the conclusion that it is more likely than not that his injuries were caused by the defendant's negligence. Where the probabilities are at best evenly divided between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof. The plaintiff need not, however, conclusively exclude all other possible explanations, and so prove his case beyond a reasonable doubt. Such proof is not required in civil actions, in contrast to criminal cases. It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. This conclusion is not for the court to draw or to refuse to draw, in any case where either conclusion is reasonable; and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so."

We have found no Texas cases which decide who makes the determination of the essentials of res ipsa. We know of no reason why these elements should not be made by the finder of the facts—with the proper instructions—and subject to the same appellate review as any other fact determination.

■ Believing that the trial courts, the attorneys, and the litigants have a right to expect explicit direction in the trial and submission of their problems, we herewith hold that in res ipsa loquitur situations the plaintiff has the burden of establishing by a preponderance of the evidence the following elements:

1. The character and circumstance of the accident is such as to lend reasonably to the belief that, without

negligence, it would not have occurred.

2. The thing that caused the injury is shown to have been under the management and control of the defendant.

3. It is more reasonably probable that the accident was caused by defendant's negligence, than not.

■■ We hope, and believe, this holding will encourage all parties to reveal all proof at their disposal. If after the conclusion of the evidence, specific acts of negligence are raised, the doctrine is not applicable. Dallas Railway & Terminal Co. v. Clayton, 274 S.W.2d 422 (Tex.Civ. App., Dallas, 1954, ref. n. r. e.) See Hall v. National Supply Company, 270 F.2d 379 (5th Cir. 1959); Robertson v. Southwestern Bell Telephone Co., 403 S.W.2d 459 (Tex.Civ.App., Tyler, 1966, no writ). For it is not the occurrence of an injury, but the manner and attending circumstances that justifies application of the doctrine. Its applicability must develop upon the peculiar facts and circumstances of each individual case. Smith v. Caplan, 425 S.W. 2d 477 (Tex.Civ.App., Amarillo, 1968, no writ).

It follows from what we have said that the court erred in entering judgment based on the special issues submitted and answered by the jury. Appellants' second point is sustained and the cause is reversed and remanded for a new trial.

Reversed and remanded.