**MOBIL CHEMICAL COMPANY,
Petitioner,**

**v.**

**Edward L. BELL et al., Respondents.**

**No. B–4447.**

Supreme Court of Texas.

Dec. 11, 1974.

Rehearing Denied Jan. 15, 1975.

Orgain, Bell & Tucker, Cleve Bachman and Zollie Carl Steakley, Beaumont, for petitioner.

Waldman & Smallwood, Carl Waldman and William Hays Seele, Beaumont, for respondents.

McGEE, Justice.

This is a common law damage suit for personal injuries sustained by Edward L. Bell and J. A. Hurley, employees of an independent contractor constructing a large chemical plant for Mobil Chemical Company, when acetic acid escaped from a portion of the plant already completed and turned over to Mobil. A jury failed to find that Mobil was guilty of specific acts of negligence but answered *res ipsa loquitur* issues favorably to the plaintiffs.[1] Based on these findings, judgment was entered that each plaintiff recover $12,000 from Mobil. The court of civil appeals has held, *inter alia*, that the *res ipsa* theory was improperly submitted to the jury and

has reversed and remanded for a new trial. 502 S.W.2d 564. We disapprove of the holding of the court of civil appeals with respect to submission of *res ipsa* cases but find ourselves compelled to affirm the judgment of remand since plaintiffs have not sought relief from the remand by applying for a writ of error.

As in any *res ipsa* case, the particular facts surrounding the event are extremely important. This case involves a plant being constructed to manufacture terephthalic acid [TPA]. The plant basically consists of two units, designated Unit A and Unit B, of identical design with several common vessels which make them interrelated. Each unit is designed to produce TPA in a two step process. First, paraxylene is oxidized in the oxidation section to form crude TPA, a solid precipitate. Then this precipitate is mixed into a slurry with an acetic acid carrier and pumped to the leach section where the TPA is purified by a heating process. This entire operation is conducted under varying degrees of pressure. The area where the highest pressure is expected is the feed line leading to the leach section where normal operating pressures vary from 425 to 650 pounds per square inch [p. s. i.].

At this point a pressure relief mechanism is included to protect the system from pressure surges that may occur during operation. Since this lawsuit arose from a

---

1. The pertinent special issues are as follows:
SPECIAL ISSUE NO. 3: Do you find from a preponderance of the evidence that at the time and on the occasion in question the leach section of Unit A of the terephthalic acid plant was under the exclusive control and direction of the defendant? ANSWER: We do.
SPECIAL ISSUE NO. 5: Do you find from a preponderance of the evidence that on the occasion in question defendant failed to use ordinary care in the maintenance of leach section of Unit A of the terephthalic acid plant? ANSWER: It failed.

SPECIAL ISSUE NO. 6: Do you find from a preponderance of the evidence that such failure, if you have so found, was a proximate cause of the incident in question? ANSWER: We do.
SPECIAL ISSUE NO. 7: Do you find from a preponderance of the evidence that on the occasion in question defendant failed to have a pressure gauge on the leach section? ANSWER: We do not.
SPECIAL ISSUE NO. 10: Do you find from a preponderance of the evidence that on the occasion in question, the defendant failed to close the value of the leach section? ANSWER: We do not.

failure of this mechanism, a fairly detailed description is necessary. A simplified diagram of the pressure relief mechanism is reproduced below.

The feed line is three or four inches in diameter. From this a one inch pipe leads up to a relief valve, which is designed to open when the pressure exceeds 850 p. s. i. and relieve the pressure by allowing some of the fluid to escape into a larger pipe from which it eventually returns to the feed line. Since the feed line normally carries a slurry, there is a danger of the solid matter in the slurry accumulating in and clogging the relief valve mechanism. To prevent this the one inch pipe leading to the relief valve contains a rupture disc blocking access to the relief valve. Under normal operations this disc will prevent the slurry from entering the pressure relief mechanism. However, if a pressure surge exceeds 850 p. s. i. the disc is designed to rupture, allowing the slurry to travel up the one inch pipe to the relief valve, which relieves the pressure. As an additional precaution, a second rupture disc is inserted in the one inch pipe a short distance above the first one and serves the same purpose as the first.

A pressure gauge is attached between the two discs to serve as a "tattletale" and tell operating personnel that the discs have been ruptured. The attachment is made by means of quarter inch pipe which runs horizontally from the one inch pipe to a valve [Valve A] and then on to a vertical "T" connection. On the top opening of the "T" a 0–1,000 p. s. i. pressure gauge is inserted and the bottom opening has a bleeder valve which is kept closed except to drain fluid from the gauge. During normal operations Valve A is kept open and the pressure gauge reads 0 p. s. i. since the lower rupture disc keeps the pressurized slurry out of the relief mechanism. However, if the pressure exceeds 850 p. s. i., the disc ruptures, the slurry comes into the relief mechanism, and the pressure gauge registers a positive reading, informing operating personnel that the discs should be replaced before the relief valve becomes clogged.

Mobil Chemical Company had contracted the design and construction of the plant to an independent contractor, C. F. Braun and Company. As each section of the plant was completed, it was tested and turned over to Mobil. By March 21, 1966 C. F. Braun had completed all of Unit A and conducted a hydrostatic test under the supervision of Mobil. The hydrostatic test consisted of filling the system with water

under pressure substantially above operating level to check for leaks. Unit A passed this test and was accepted by Mobil. Mobil also conducted a visual inspection of the entire system and was satisfied that the Unit was assembled properly and that all equipment was in place. Mobil then began the process of "commissioning" the Unit. This consisted of operating the equipment first with water and later with acetic acid, but without actually producing TPA.

Shortly after noon on April 4, 1966 a pressure surge caused the pressure in the feed line to exceed 850 p. s. i. At this time the pressure relief mechanism worked perfectly—the discs ruptured, the relief valve relieved the pressure, and the pressure gauge indicated that the discs were ruptured. Mobil maintenance personnel then replaced the discs, bled the acetic acid out of the relief mechanism, and continued the commissioning process. Just before 5:00 P.M., April 5, 1966 the feed line was again overpressured. This time, however, the pressure relief mechanism failed and acetic acid under high pressure spurted out of the quarter inch pipe and into the atmosphere, creating both a danger to personnel and a fire hazard. As soon as he realized where the leak was, Jerry Griffith, Mobil's process superintendent, put on protective equipment, crawled out on the feed line and stopped the leak by closing Valve A.

Plaintiffs Bell and Hurley were employees of C. F. Braun and were working on Unit B of the plant at a point some 70 feet from the rupture. Both were exposed to strong acetic acid vapor and suffered respiratory damage for which they seek recovery. They alleged specific acts of negligence in failing to either have the pressure gauge in place or close Valve A and in the alternative pleaded *res ipsa loquitur*. The jury failed to find that the specific acts of negligence were committed and these findings have not been attacked on appeal. The jury did find, however, that Mobil failed to use ordinary care in maintaining the plant and that such failure was a proximate cause of the incident in ques-

tion. The district court overruled Mobil's motion for judgment non obstante veredicto and entered judgment for plaintiffs.

The court of civil appeals agreed that the facts of the case raise the doctrine of *res ipsa loquitur* but concluded that in *res ipsa* cases where there is evidence of causes other than the defendant's negligence, the jury should be asked if it finds from a preponderance of the evidence that:

"1. The character and circumstance of the accident is such as to lend reasonably to the belief that, without negligence, it would not have occurred.

"2. The thing that caused the injury is shown to have been under the management and control of the defendant.

"3. It is more reasonably probable that the accident was caused by defendant's negligence than not." 502 S.W.2d 567–568.

We granted writ of error in this case to examine the method of submitting a *res ipsa loquitur* case to the jury. We conclude that the formulation suggested by the court of civil appeals is not proper since it confuses the roles of judge and jury.

■ Before discussing the method of submission, it is helpful to focus on exactly what is encompassed within the doctrine of *res ipsa loquitur*. The phrase, meaning "the thing speaks for itself," was used by Pollock, C. B., in discussing a barrel of flour which fell from the defendant's window, Byrne v. Beadle, 2 H. & C. 722, 159 Eng.Rep. 299 (Ex.1863), and has come to signify that in certain limited types of cases the circumstances surrounding an accident constitute sufficient circumstantial evidence of the defendant's negligence to support such a fact finding. See Morris, Res Ipsa Loquitur in Texas, 26 Texas L. Rev. 257 (1948). These cases are those in which the circumstances surrounding the event are such that the mere occurrence of the accident supports reasonable inferences that there was negligence involved and

that the defendant was the negligent party. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659 (1935); W. Prosser, Law of Torts § 39 at 211–214 (4th ed. 1971).

 The *res ipsa* doctrine is applicable when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. Owen v. Brown, 447 S.W.2d 883 (Tex.1969); Bond v. Otis Elevator Co., 388 S.W.2d 681 (Tex.1965); McCray v. Galveston, H. & S. A. Ry. Co., 89 Tex. 168, 34 S.W. 95 (1896); 2 F. Harper & F. James, The Law of Torts § 19.5 (1956); W. Prosser, supra at 214. The first factor is necessary to support the inference of negligence and the second factor is necessary to support the inference that the defendant was the negligent party. See Bond v. Otis Elevator Co., supra. As such the "control" requirement is not a rigid rule that the instrumentality must have always been in the defendant's possession or even that it must have been in the defendant's control at the time of the injury. Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968 (1944). It is sufficient if the defendant was in control at the time that the negligence inferable from the first factor probably occurred, so that the reasonable probabilities point to the defendant and support a reasonable inference that he was the negligent party. Birmingham v. Gulf Oil Corp., 18 Tex. Sup.Ct.J. 59 (Nov. 16, 1974); Morris, Res Ipsa Loquitur in Texas, supra at 263–268; W. Prosser, supra at 218–221. The possibility of other causes does not have to be completely eliminated, but their likelihood must be so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door. 2 F. Harper & F. James, supra at § 19.7.

 In Texas it is well settled that *res ipsa loquitur* is simply a rule of evidence whereby negligence *may* be inferred upon proof of the factors stated above. Owen v. Brown, supra; Honea v. Coca Cola Bottling Co., supra; Wichita Falls Traction Co. v. Elliott, supra; Texas & P. Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3 (1910). Texas courts have quoted with approval the following language of the U. S. Supreme Court in Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L. Ed. 815 (1913):

> "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

 As tersely put above, the effect of successfully invoking the *res ispa* doctrine is that the plaintiff can survive no-evidence procedural challenges—he has produced some evidence of the defendant's negligence. He is in the same position as any other plaintiff who has made out a case for the jury. No presumption of the defendant's negligence arises; the jury is merely free to infer negligence. See Sudduth v. Commonwealth County Mutual Insurance Co., 454 S.W.2d 196 (Tex.1970). The plaintiff continues to have the burden of persuading the jury by a preponderance of all the evidence that the defendant was negligent. Wichita Falls Traction Co. v. Elliott, supra; St. Louis Southwestern Ry. Co. of Texas v. Parks, 97 Tex. 131, 76 S.W. 740

(1903); Morris, Res Ipsa Loquitur in Texas, supra at 768–772. While it is often said that *res ipsa* places the burden of going forward with the evidence upon the defendant, it is the rare *res ipsa* case where the defendant is in danger of a directed verdict if he chooses not to explain the accident. Hensley v. Fort Worth and Denver Railway Co., 408 S.W.2d 761 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.). This is because the inferences to be drawn from the circumstances of the accident are within the province of the jury, not the court. Only in extraordinary circumstances does the mere occurrence of the accident so strongly compel a conclusion that the defendant was negligent that the jury could not reasonably find otherwise. See Moore v. Atchison, T. &. S. F. R. Co., 28 Ill.App.2d 340, 171 N. E.2d 393 (1960); Annot., 97 A.L.R.2d 511 (1964). Of course, in any case the defendant may, if he chooses, produce evidence to lessen the impact of the plaintiff's circumstantial evidence. See W. Prosser, supra § 40 at 228–229.

■■ In order to rely on the *res ipsa* doctrine, the plaintiff must produce evidence from which the jury can conclude, by a preponderance of the evidence, that both the "type of accident" and "control" factors are present. This is not so much a rule of law as it is a rule of logic—unless these factors are present, the jury cannot reasonably infer from the circumstances of the accident that the defendant was negligent. In a great many cases the plaintiff can rely upon general knowledge to prove the accident in question is the type of accident which does not ordinarily happen in the absence of negligence. Morris, Res Ipsa Loquitur in Texas, supra at 260–263, n. 14; 2 F. Harper & F. James, supra § 19.6. However, expert testimony on this factor is clearly admissible and may be necessary to the plaintiff's case. McCray v. Galveston, H. &. S. A. Ry. Co., 89 Tex. 168, 34 S.W. 95 (1896); Simpson v. Dallas Ry. & Terminal Co., 143 S.W.2d 416 (Tex.Civ.App.—Dallas 1940, writ dism'd

judgmt cor.). The plaintiff must also prove that the instrumentality was under the management and control of the defendant. Owen v. Brown, 447 S.W.2d 883 (Tex.1969). As previously discussed, this requirement must be interpreted in the factual setting of each case. Disputes may arise as to what instrumentality caused the injury, when the negligence, if any, occurred, and who was in control at that time. In any event, the plaintiff must produce evidence from which the jury can reasonably conclude that the negligence, if any, is attributable to the defendant.

■ While the plaintiff must produce evidence enabling the jury to reasonably conclude that the two required factors are present, this does not mean that issues inquiring about these factors must or should be submitted. The pertinent question for the jury's determination is whether the defendant was negligent. The "type of accident" and "control" factors are just subissues of this ultimate issue. The court of civil appeals below has held that in a *res ipsa loquitur* case the trial court must submit these subissues if they are raised by the evidence. We disapprove this holding. There may be justification for submitting one or both of these subissues in a particular case in order to focus the jury's attention on the matter. However, we believe the better practice in the great majority of cases is to submit only the ultimate negligence issue. If the trial court is satisfied that there is probative evidence of both factors, he should ask the jury whether the defendant was negligent. A finding of negligence necessarily includes findings that the accident would not ordinarily occur in the absence of negligence and that the defendant was in control of the instrumentality at the appropriate time. Submitting these subissues to the jury is unnecessary, duplicitous, and may confuse the jury and divert its attention from the real issue. See Note, Submission of "Defendant's Exclusive Control" in Res Ipsa Loquitur Special Issue Charge, 36 Texas L.Rev. 696 (1958).

■ The court of civil appeals has also held that when the defendant's rebutting evidence suggests other causes of the accident than the defendant's negligence, it becomes a jury issue whether, "It is more reasonably probable that the accident was caused by defendant's negligence, than not." We do not agree. Not only is the trial court not required to submit such an issue but we believe it would be error to do so. The issue as framed asks the jury if it would be reasonable to find the defendant negligent. This is a determination that the trial court must make before submitting the negligence issue to the jury. Texas & N. O. Ry. Co. v. Crowder, 63 Tex. 502 (1885). If the issue was intended as a predicate to asking whether the defendant was negligent, it is a usurpation of the trial court's traditional function of determining whether fact findings can be reasonably made. If the issue was intended as a substitute for the usual negligence issue, it is inferior to and adds nothing to the traditional formulation. When the jury is asked if it finds a fact by the preponderance of the evidence, the elements of "reasonably" and "more probably than not" are necessarily included.

We therefore conclude that the method of submitting *res ipsa loquitur* cases formulated by the court of civil appeals is not a required or even a proper method of submission. The court of civil appeals erred in holding that the trial court improperly submitted the *res ipsa loquitur* issues in this case.

Besides complaining of the court of civil appeals' formulation of *res ipsa* issues, Mobil asks this court to render judgment in its favor on the grounds that Plaintiffs Bell and Hurley failed to make out a *res ipsa loquitur* case or, if they did, Mobil completely rebutted it. These both are essentially "no evidence" points arguing that there is no evidence to support the jury's finding that Mobil was negligent. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

■ The first complaint turns on whether the plaintiffs ever successfully invoked the *res ipsa* doctrine by producing probative evidence of both required factors. Both lower courts have held that the facts of this case raise the *res ipsa* doctrine. We agree. The facts show that the entire plant was designed as a closed system so that acid vapors would not be released into the atmosphere. The relief mechanism was included to prevent the same sort of occurrence as happened here. It is true that this was a new plant just being started up. However, we are not dealing with a minor leak of the type that can hardly be avoided with new equipment, but a violent rupture spewing acid 30 feet into the air. It seems reasonable to infer that due care could have prevented the accident. And since Mobil had accepted the Unit only after extensive tests, had been in control of the equipment for at least two weeks, and had been performing additional tests and maintenance, it is reasonable to infer that if negligence was involved, Mobil was the negligent party. From the circumstances of the accident, a jury could reasonably decide that Mobil's negligence probably caused the accident and the resulting injuries. We conclude that Plaintiffs Bell and Hurley made out a *res ipsa* case and therefore satisfied their burden of producing some evidence of Mobil's negligence.

The second complaint argues that Mobil's rebutting evidence completely negated the plaintiffs' *res ipsa* case and made it unreasonable to infer that Mobil's negligence caused the accident. Mobil's evidence consisted primarily of testimony by Marvin Fannin, a chemical engineer with Mobil, who saw the equipment after the accident. He testified that the quarter inch pipe broke between Valve A and the pressure gauge, which caused the acid to spew out horizontally. He theorized that the pipe might have broken because (1) it was defectively manufactured, (2) the metal crystallized when threads were cut improperly, or (3) the metal crystallized when the pipe was overly tightened upon installation. He

explained that the pipe could have been further weakened by operational vibrations until it was so weak that it broke under the sudden pressure.

While the jury was certainly entitled to believe this explanation, it was not compelled to. There was testimony from both Plaintiff Bell and Jerry Griffith, Mobil's process superintendent, that the acid was spewing straight up, indicating that the rupture was located at the pressure gauge connection instead of the quarter inch pipe and thus discrediting Mobil's entire theory. Since the same mechanism had worked properly the day before, the jury could have concluded that any structural weaknesses were more probably caused by Mobil's maintenance personnel in replacing the rupture discs, etc., than by causes prior to Mobil's control of the Unit. The jury also could have believed that Mobil's testing procedures were inadequate or negligently followed if it did not discover such structural weaknesses before pumping acid at high pressure through the system. In short, the jury could still reasonably infer from the circumstances of the accident that the accident was probably caused by Mobil's negligence. Therefore, we hold that the trial court did not err in submitting the *res ipsa* issues to the jury. Roberts v. Texas & P. Ry. Co., 142 Tex. 550, 180 S.W.2d 330 (1944); Yarbrough's, Inc. v. McNabb, 222 S.W.2d 274 (Tex.Civ.App. —Eastland 1949, writ ref'd n.r.e.).

■ We conclude that Mobil is not entitled to a rendition of judgment in its favor. Plaintiffs Bell and Hurley have not filed an application for writ of error seeking an affirmance of the trial court's judgment in their favor rather than the remand for new trial ordered by the court of civil appeals. Since we cannot grant a party relief unless he files an application for writ of error, the judgment of remand will stand. Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 308, 162 S.W.2d 929, 930–931 (1942); Hatchell and Calvert, Some Problems of Supreme Court Review, 6 St. Mary's L.J. 303, 311–312 (1974).

## ON REMAND

Since we have rejected the form of submission suggested by the court of civil appeals and since, on remand, this case will be tried under the provisions of Rule 277, Texas Rules of Civil Procedure, as amended effective September 1, 1973, we think it appropriate to further express our views concerning the submission of *res ipsa loquitur* cases under that rule, particularly with respect to cases, such as this one, tried on alternate theories of specific negligence and *res ipsa loquitur*.

■ First, it should be noted that a plaintiff does not necessarily lose the right to rely on the *res ipsa* doctrine by pleading specific acts of negligence. "The purpose of pleading is to apprise opposing parties of the exact grounds of complaint against them, so that they may prepare to meet the issues thus made." Johnson v. Galveston, H. & N. Ry. Co., 66 S.W. 906, 908 (Tex. Civ.App.1902, writ ref'd). If a plaintiff pleads specific acts of negligence only, his proof is limited to those specific acts but may consist of circumstantial evidence, including the circumstances of the accident if the inferences reasonably arising from such circumstances are relevant to the specific acts alleged. However, if the plaintiff's pleading gives fair notice that he is not relying solely on specific acts but instead intends to also rely on any other negligent acts reasonably inferable from the circumstances of the accident, his proof is not limited to the specific acts alleged. Honea v. Coca Cola Bottling Co., supra; Wichita Falls Traction Co. v. Elliott, supra.

■ Likewise, proof of specific acts of negligence does not necessarily make the *res ipsa* doctrine inapplicable since proof of specific acts is not necessarily inconsistent with inferences of other facts. Of course, if the evidence, whether introduced by the plaintiff or the defendant, conclusively establishes the facts surrounding the accident, then there is no room for inferences and the *res ipsa* doctrine is not appli-

cable. See Sims v. Dallas Ry. & Terminal Co., 135 S.W.2d 142 (Tex.Civ.App.—Dallas 1939, no writ); W. Prosser, supra at 231–232. But where the evidence is inconclusive, the plaintiff is still entitled to rely on any inferences that are consistent with the evidence. Wichita Falls Traction Co. v. Elliott, supra; Smith v. Koenning, 398 S.W.2d 411 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.).

 If the plaintiff has given notice in his pleadings that he will rely on *res ipsa loquitur* and has introduced probative evidence of the two requisite factors, the problem facing the trial court is how to submit the *res ipsa* case made out by the plaintiff. This is controlled by Rule 277, Texas Rules of Civil Procedure, which now provides, in pertinent part:

> "It shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues."

The rule means that in an ordinary negligence case, where several specific acts of negligence are alleged and evidence as to each is introduced, the submission of a broad issue inquiring generally whether the defendant was negligent is not error and is not subject to the objection that the single issue inquires about several elements or issues. It certainly means also that in a *res ipsa* case, where several negligent acts may be inferable from the circumstances of the accident, a single broad issue inquiring generally about negligence would be proper. Such a submission was the general practice even before the amendment of Rule 277. International-Great Northern R. Co. v. Lucas, 128 Tex. 480, 99 S.W.2d 297 (1936); Yarbrough's, Inc. v. McNabb, 222 S.W.2d 274 (Tex.Civ.App.—Eastland 1949, writ ref'd n.r.e.); Beaumont Coca Cola Bottling Co. v. Guillot, 222 S.W.2d 141 (Tex.Civ.App.—Beaumont 1949, writ ref'd n.r.e.); Hensley v. Fort Worth and Denver Railway Co., 408 S.W.2d 761 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); 9 Stayton, Texas Forms § 5131 (1961).

 A more complicated situation arises when the plaintiff pleads and proves a *res ipsa* case and also pleads and proves specific acts of negligence. In the instant case the trial court submitted both a general negligence issue based on *res ipsa* proof and specific negligence issues based on proof of specific acts. There are other cases where the same method has been used. Montgomery Ward & Co. v. Scharrenbeck, 199 S.W.2d 830 (Tex.Civ.App.—Eastland 1947), aff'd, 146 Tex. 153, 204 S.W.2d 508 (1947); Tyreco Refining Co. v. Cook, 110 S.W.2d 219 (Tex.Civ.App.—Texarkana 1937, writ dism'd). There is obviously some overlap involved since if the jury answers any of the specific negligence issues affirmatively, it should also answer the general negligence issue affirmatively. In fact, the submission of the general negligence issue embraces all of the narrower specific grounds of negligence and the submission of the case both ways is a double submission of the same issues. We disapprove the practice of submitting the same issue in two different ways, although such a submission would not necessarily be reversible error. If the plaintiff pleads both *res ipsa* and specific acts and produces evidence of each, the trial court should submit a single general negligence issue embracing the entire range of possible negligent acts supported by the evidence. If the plaintiff pleads both *res ipsa* and specific acts and proves the latter while failing to prove the former, the trial court has discretion under Rule 277 to either submit each of the specific acts supported by the evidence, as is the normal practice now, or submit a single general negligence issue embracing all of the specific acts supported by the evidence.

 A final question to be considered is whether the trial court should give an instruction about *res ipsa loquitur*

in an appropriate case. We held in Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546 (Tex.1969) that the *res ipsa loquitur* instruction given in that case[2] constituted a general charge in violation of Rule 277 as then written because it "plainly advised the jury that, if certain facts were found to exist, the jury should answer issue No. 3 that the explosion of the bottle was caused by petitioner's negligence." 443 S.W.2d 546, 551. An examination of that charge reveals that it is also objectionable for other reasons, being lengthy, repetitive and couched in terms of the victory or defeat of one of the parties. Amended Rule 277 now reads, in pertinent part:

> "In submitting the case, the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject to the objection that it is a general charge.
>
> " . . .
>
> "The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers where it is properly a part of an explanatory instruction or definition."

This rule affords the trial court considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. Sound exercise of this discretion is particularly important in *res ipsa* cases in order to accommodate the wide range of situations which can arise in these cases. In some cases the inferences arising from the circumstances of the accident are so apparent that no special instruction is necessary. In other cases it is sufficient to give the jury a circumstantial evidence instruction to instruct them that acts of negligence can be proved both by direct evidence and by inferences from other facts proved. Finally, there are some cases in which it is helpful to give the jury a more specialized *res ipsa* instruction to the effect that if they find the two required factors, they are entitled, but not compelled, to infer that the defendant was negligent.

As an example and summation of our views expressed above, we believe that if the same evidence is presented at retrial of the instant case, plaintiffs' case may be properly submitted in the following manner:

1. Did Edward Bell sustain an injury while on the premises of the defendant on or about April 5, 1966?

2. Did J. A. Hurley sustain an injury while on the premises of the defendant on or about April 5, 1966?

---

2. "In connection with the foregoing Special Issues No. 3 and 4, you are instructed that if the explosion, if any, was part of an occurrence as would not ordinarily happen without fault on the part of the Defendant prior to and at the time of the delivery of the Coca Cola bottle and its contents in question to the Plaintiff, and that the Coca Cola bottle and its contents was handled with due care after such delivery, and that the Coca Cola bottle and its contents was not altered or changed in any way after such delivery and up to the time of any explosion, then you may find that the explosion, if any, was caused by negligence, if any, of the Defendant under the doctrine of 'res ipsa loquitur' or 'the event or thing speaks for itself.' Further, this doctrine of 'res ipsa loquitur' rests upon the proposition that such an explosion, if any, must be such as in the ordinary course of events and things does not happen without negligence, if any, on the part of the one having the exclusive management or control of the bottling and delivery process."

3. Was the escape of the acetic acid on the occasion in question due to the negligence of defendant, its agents, servants, or employees?

4. Was such negligence, if you have so found, a proximate cause of the injuries, if any, to Edward Bell?

5. Was such negligence, if you have so found, a proximate cause of the injuries, if any, to J. A. Hurley?

6. Damages as to Edward Bell?

7. Damages as to J. A. Hurley?

Among the definitions in the forepart of the charge, the trial court may include an explanation of *res ipsa loquitur* similar to the following:

"You are instructed that you may infer negligence by a party but are not compelled to do so, if you find that the character of the accident is such that it would ordinarily not happen in the absence of negligence and if you find that the instrumentality causing the accident was under the management and control of the party at the time the negligence, if any, causing the accident probably occurred."

This general instruction may require variations under the particular circumstances of individual cases.

We affirm the judgment of the court of civil appeals remanding the cause for new trial.

Concurring opinion by DANIEL, J.

DANIEL, Justice (concurring).

As I understand the Court's opinion, the manner of submission of the issues by the trial court would not be reversible error in this case. Therefore, I concur in the result.