**CITY OF WICHITA FALLS,**
Texas, Appellant,

v.

**Pedro ALVARADO, Sr., and Yldifonsa Alvarado and Arlene Alvarado Herrera, Appellees.**

No. 2–89–093–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 16, 1991.

Rehearing Overruled Feb. 12, 1991.

H.P. Hodge, Jr., Wichita Falls, for appellant.

David K. Phillips and Anderson & Rodriquez, Wichita Falls, for appellees.

Before JOE SPURLOCK, II, HILL and MEYERS, JJ.

## OPINION

HILL, Justice.

The City of Wichita Falls appeals from a judgment for damages resulting from the verdict of a jury. Pedro Alvarado, Sr., his wife Yldifonsa Alvarado, and their daughter Arlene Alvarado Herrera brought this suit after Arlene was required to take rabies shots because a dog that had bitten her disappeared from the city's animal control center. In two points of error, the city urges that the trial court erred in submission of a question because it allowed the jury to base a finding of negligence on the failure of the city to provide personnel at the animal control center on a twenty-four hour basis, which the city had no legal duty to do, and because the question allowed the jury to infer negligence under the doctrine of *res ipsa loquitur*.

We affirm because the trial court did not err in its submission of question number one in the form that was submitted. Although we hold that the court's instruction on *res ipsa loquitur* was in error because it was not supported by the evidence, we are unable to determine whether it was such an error as to probably cause the rendition of an improper judgment because of the absence of the final arguments from the statement of facts.

The city contends in point of error number one that the trial court erred in submitting question number one in the form it was submitted because the question allowed the jury to base a finding of negligence on the failure of the city to provide personnel at the animal control center on a twenty-four hour basis, despite the city's having no legal duty to provide such personnel.

In question number one, the court asked the jury whether the City of Wichita Falls failed to maintain proper security at its city pound facilities at the time the dog in question disappeared. The answer portion of the question contained two columns. The first column was headed *Failure to maintain proper security.* The second column was headed *Negligence.* The jury answered yes in both columns, therefore finding that the city failed to maintain proper security at the animal control center when the dog disappeared, and that its failure to do so constituted negligence.

The Alvarados made at least ten allegations relating to the failure to maintain proper security at the animal control center. Of these, only three alleged that the city was negligent by failing to provide personnel at the center on a twenty-four hour basis.

The city in effect argues that it had no duty to provide twenty-four hour personnel at its animal control center, and that the trial court erred by not limiting the jury's consideration of the security issue to the other acts of negligence alleged by the Alvarados.

The Alvarados contend, and the city does not dispute, that it owes a duty to maintain proper security at its animal control center for the benefit of persons such as Arlene. The city wishes us to take one of the alleged defects in the city's security, that of its failure to provide twenty-four hour personnel at the center, and hold that as a matter of law it has no duty to provide such personnel.

■ We decline to so hold. If the city has the duty to maintain proper security of the animal control center, then it is for the jury to determine whether any of the alleged omissions on the part of the city constituted negligence, including the allegation that the city failed to provide personnel on a twenty-four hour basis. The jury heard testimony relating to the benefits or the lack thereof concerning the provision of personnel on a twenty-four hour basis, including the cost to the city of providing such personnel. The city does not contend that there was no evidence, or insufficient evidence to support such a sub-

mission to the jury. We hold that the trial court did not err in not excluding the city's failure to provide personnel on a twenty-four hour basis as a possible basis for the jury's answer to the question dealing with the city's failure to maintain proper security at the animal control center.

The city primarily relies on the cases of *Coleman v. Hudson Gas and Oil Corporation*, 455 S.W.2d 701 (Tex.1970); *Shell Oil Company v. Songer*, 710 S.W.2d 615 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Mercola v. City of San Antonio*, 487 S.W.2d 763 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Webb v. City of Lubbock*, 380 S.W.2d 135 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.); and *City of Bryan v. Jenkins*, 247 S.W.2d 925 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.).

We find these authorities to be distinguishable. *Shell Oil Company v. Songer* involved an accident to an employee of an independent contractor making electrical repairs upon premises owned by Shell. The court held that Shell, as the owner of the premises, had no duty to see to it that its independent contractor, hired to make electrical repairs, performed its work in a safe manner. We fail to see the relevance of this rule to the issue before us. *Coleman* also appears to relate to the issue of the duty as between the occupier of premises and an employee of an independent contractor hired to work with what would be known to the independent contractor and its employees to be a dangerous condition. Again, those issues have no bearing on the matter before us.

■ In *City of Bryan v. Jenkins*, a tenant and her landlord sued the City of Bryan after they suffered damages when water pipes in an upper floor of the landlord's premises caused damage to the lower floor where the tenant resided. Water service to the upper floor had previously been cut off by the city as requested. In reversing a judgment in favor of both the tenant and the landlord, the court held that the city owed no duty to the tenant since she was not their water customer and that the city owed no duty to maintain the security of its

water meter boxes to prevent anyone from tampering with the water connection. Consequently, it had no duty to provide locks or take any other action to secure the meter boxes. Likewise, in *Webb v. City of Lubbock*, the court held that the City of Lubbock had no duty to lock its water meters to keep people from falling into them. Both courts in effect held that a city had no legal duty to secure its water meters. In this case, it is undisputed that the City of Wichita Falls does have a duty to maintain the security of its animal control center. Given that duty, the issue of whether the city was negligent in failing to provide twenty-four hour personnel was for the jury.

In *Mercola v. City of San Antonio*, the court held that a city that was turning off the electricity in an office building at the request of an electric company doing repair work at the building owed no duty to an employee of one of the building's tenants who was using one of the building's elevators to warn him that power to the elevator was being cut off, to lock the elevator, or to have someone near the elevator. Again, in this case it is undisputed that the city did have a duty to someone in Arlene's situation to maintain proper security at its animal control center. We overrule point of error number one.

■ The city urges in point of error number two that the trial court erred in submitting question number one in the form submitted because it allowed the jury to infer negligence under the doctrine of *res ipsa loquitur* because all of the evidence establishes that loss of dogs out of an animal control facility happens in the absence of negligence.

■ In order to rely upon the doctrine of *res ipsa loquitur*, the plaintiff must produce evidence that the character of that which occurred would not ordinarily occur in the absence of negligence, and that the instrumentality causing the injury is shown to have been under the management and control of the defendant.

Testimony presented at trial included portions of the deposition of Toni DeStefa-

no, Executive Director of the Humane Society of Wichita County. She testified that she had been with the humane society for eighteen years, and the executive director for ten years. She stated that the humane society had a twenty-four hour watchman for security purposes, but that did not wholly prevent thefts of animals. She related that if a dog disappeared from her facility and she found no signs of forced entry she would not infer negligence from that on the part of someone within her organization. She testified that in her opinion a dog could just disappear from a facility such as hers in the absence of negligence because there is no such thing as one hundred per cent safety.

There was no testimony that the disappearance of animals from a facility such as the one here does not ordinarily occur in the absence of negligence.

In *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 251 (Tex.1974), the Texas Supreme Court held that:

> The *res ipsa* doctrine is applicable when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant.

*Id.* at 251. In addition, the Court stated that:

> In order to rely on the *res ipsa* doctrine, the plaintiff must produce evidence from which the jury can conclude, by a preponderance of the evidence, that both the "type of accident" and "control" factors are present. This is not so much a rule of law as it is a rule of logic—unless these factors are present, the jury cannot reasonably infer from the circumstances of the accident that the defendant was negligent. In a great many cases the plaintiff can rely upon general knowledge to prove the accident in question is the type of accident which does not ordinarily happen in the absence of negligence. Morris, Res Ipsa Loquitur in Texas, supra at 260–263, n. 14; 2 F. Harper & F. James, supra [sec.] 19.6.

However, expert testimony on this factor is clearly admissible and may be necessary to the plaintiff's case. *McCray v. Galveston, H. & S.A. Ry. Co.*, 89 Tex. 168, 34 S.W. 95 (1896); *Simpson v. Dallas Ry. & Terminal Co.*, 143 S.W.2d 416 (Tex.Civ.App.—Dallas 1940, writ dism'd judgmt cor.).

*Id.* at 252.

It is undisputed that the Alvarados presented no expert testimony to the effect that dogs do not ordinarily disappear from animal control centers in the absence of negligence. The issue, then, is whether general knowledge shows that dogs do not ordinarily disappear from animal control centers in the absence of negligence. We have no basis for inferring such general knowledge and we have not been referred to any source whose accuracy cannot reasonably be questioned in support of such an inference. *See* TEX.R.CIV.EVID. 201. Consequently, we hold that the trial court erred in including an instruction concerning the doctrine of *res ipsa loquitur.*

■ We are not to reverse a judgment on appeal unless we are of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). Given the nature of the error involved in this case, such a determination would involve an examination of the entire record, including the final arguments to the jury, because if the Alvarados' final argument was geared exclusively to specific acts of negligence, with little or no emphasis on an inference of negligence based on *res ipsa loquitur*, it might be that we would determine that the error was not such as probably did cause the rendition of an improper judgment. Unfortunately, the final arguments are not included as part of the statement of facts. Because the absence of the final arguments in the statement of facts precludes us from determining whether the trial court's error was such as to probably cause the rendition of an improper judgment, we must overrule point of error number two. *See* TEX.R.APP.P. 50(d). Al-

though the city brought to us a sufficient record to show error, it did not present us with a sufficient record to show error requiring reversal.

The judgment is affirmed.