Wendell C. SCHORLEMER,
M.D., Appellant,

v.

Beatriz G. REYES, Appellee.

No. 04–97–00422–CV.

Court of Appeals of Texas,
San Antonio.

April 8, 1998.

Rehearing Overruled June 4, 1998.

Thomas F. Nye, Linda C. Breck, Brin & Brin, P.C., Corpus Christi, for Appellant.

Nelda J. Ortiz, Law Offices of Nelda J. Ortiz, P.C., San Antonio, James L. Gorecki, Scott Roberts, San Antonio, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

GREEN, Justice.

This is a medical malpractice case arising from a gynecological surgical procedure. Beatriz G. Reyes (Reyes) sued Wendell C. Schorlemer, M.D. (Schorlemer) in negligence, claiming he unnecessarily removed an ovary, fallopian tube, and her appendix, and failed to remove a sponge from her abdomen. Schorlemer challenges the jury verdict against him in ten points of error, complaining about the submission of a res ipsa loquitur instruction, the sufficiency of the evidence, and the trial court's refusal to segregate the damages issue among the various damage categories listed in the jury charge. We affirm the trial court's judgment.

## Background

Reyes was referred to Schorlemer for treatment of a solid mass on her right ovary. On November 20, 1992, Schorlemer took an oral history from Reyes and reviewed a radiologist's sonogram report, prepared at the order of the referring physician. Without conducting any further tests to determine whether the mass might be cancerous, Schorlemer recommended Reyes undergo an exploratory laparotomy, which would include a biopsy and possible removal of reproductive organs. At that time, Schorlemer educated Reyes about this procedure and obtained her consent to perform any other necessary procedure that would become apparent during the laparotomy.

Schorlemer performed the surgery three days later at Southwest Methodist Hospital. Upon locating the tumor, Schorlemer determined that Reyes had a benign cyst. The cyst was bleeding, had the appearance of an endometrioma,[1] and was surrounded by adhesions.[2] Schorlemer testified he attempted to remove the cyst, lyse[3] the surrounding adhesions, and save the ovary, although his operative report lacks this information. Because he believed the ovary was not salvageable, Schorlemer removed it, along with the corresponding fallopian tube. He sent the organs to the pathology lab for testing; the lab report characterized the cyst as benign, with "old apparent endometriosis." Schorlemer also removed Reyes' appendix.

John Maxwell, M.D., a board certified obstetrician gynecologist, testified for the plaintiff about Schorlemer's course of treatment. Although he agreed an exploratory laparotomy would be proper to determine if a mass is cancerous, he stated that more preliminary tests should have been performed before this surgery. Judging from the pathology report of Reyes' ovary, he opined, complete removal of the ovary and fallopian tube was unnecessary. He conceded, however, that the surgeon performing the operation would be in the best position to determine whether an organ could be salvaged, and that it was possible Reyes' ovary ultimately might have been removed to alleviate the pain attributable to the adhesions.

Vincent Caldarola, M.D., a board certified general surgeon, testified for the defense. Based on his experience performing surgical resection of ovarian cancers, he opined the surgery performed by Schorlemer was fairly standard. Further cancer detection tests would not have ruled out cancer with certainty, therefore the exploratory surgery was the most reasonable method for detection.

Before closing his patient, Schorlemer received at least two correct sponge counts. Patricia Ruiz, the circulating nurse in the operating room, documented the procedure. She and Olga Felan, the scrub technician, conducted an undocumented preliminary sponge count to verify that the number of sponges in each packet matched the number stated on the packaging. As sponges are used during the operation, the scrub technician hands them to the surgeon while the circulating nurse keeps count. The sponges are counted once at the closing of the peritoneum, the abdominal lining, and verified against the circulating nurse's record. A second count occurs at the closing of the patient's skin. Ruiz and Felan stated in depositions, admitted at trial, that both counts were correct.

During the 48-hour period following surgery, Reyes' temperature twice rose sharply, and Schorlemer prescribed medication to reduce it. Fevers are significant because they indicate possible infection. Reyes was discharged on November 25 with a normal temperature and with orders to monitor it.

Schorlemer saw Reyes at his office three times in December 1992 for post-operative care. She complained of abdominal pain and bloating. Schorlemer attributed this pain to the incision and the healing process and pre-

---

1. Endometrioma is a collection of endometriosis in a cavity on or within a reproductive organ. Endometriosis is the presence and growth of endometrial tissue, normally found in the uterus, in places other than the uterus, often resulting in pain and possible infertility.

2. Adhesions are comprised of new fibrous tissue formed by the abnormal union of separate tissue surfaces resulting from an inflammatory process.

3. The procedure for disintegrating or dissolving cells.

scribed pain medication. In April 1993, Reyes consulted Schorlemer for a fertility evaluation. At that time she also reported some abdominal pain. Reyes saw Schorlemer again in July 1993, complaining of abdominal pain and nausea. Schorlemer performed a sonogram, detected a large mass in Reyes' abdomen, and recommended Reyes have the mass removed. Reyes expressed a desire for a second opinion, and Schorlemer recommended his brother. Reyes declined and sought the advice of Cynthia De la Garza, M.D., who ordered an x-ray and detected a surgical sponge. De la Garza offered to remove the sponge, with Schorlemer's assistance. Reyes refused this option and consulted an attorney who referred her to Richard Garcia, M.D.

On August 12, 1993, Garcia removed the sponge with the assistance of Sabas Abuabara, M.D. The doctors observed a six-inch-square abscess surrounding the sponge[4] in Reyes' pelvis. The doctors also drained about 250 cubic centimeters of pus, which was not infected, and lysed "massive" adhesions surrounding the small bowel. In Garcia's opinion, the adhesions were caused by the sponge. Although Reyes' left ovary and fallopian tube had been somewhat displaced by the adhesions, they were unharmed. After this surgery, Reyes underwent two more operations, with Garcia assisting, to lyse more adhesions.

Joseph Garza, M.D. treated Reyes from January through June 1994 for abdominal pain and for evaluation of her chances for future pregnancy. Garza determined Reyes' remaining (left) ovary and fallopian tube were functional. He further opined the sponge had no effect on Reyes' reproductive organs and chances for conception.

Reyes sued Southwest Texas Methodist Hospital, Schorlemer, and the circulating nurse and scrub technician who worked in the operating room during her surgery. After pre-trial settlements, Schorlemer remained the sole trial defendant. Reyes presented multiple theories of negligence to the jury, including: (1) unnecessary removal of her right ovary, right fallopian tube, and appendix; (2) improper diagnosis and failure to conduct appropriate cancer screening; (3) failure to remove a sponge before closing her wound; and (4) failure to administer proper post-operative care and to detect the sponge.

These issues, as well as damages, were broadly submitted to the jury. Over Schorlemer's objection, the charge also included instruction on the doctrine of res ipsa loquitur. The jury answered the first question in the affirmative and awarded $150,000. Reyes opted for a dollar-for-dollar credit of settlement against the jury award, obligating Schorlemer to compensate Reyes in the amount of $100,000 plus pre-judgment interest.

### Discussion

Schorlemer presents ten points of error for our review. In his first three points, he complains about the trial court's res ipsa loquitur instruction. In his fourth through ninth points, he argues the evidence was legally and factually insufficient to support the jury's findings of negligence, proximate cause, and damages. In his final point, he contends the court erred in failing to segregate the damages among the various theories of negligence posed by Reyes. We address these points in turn.

### 1. Res Ipsa Loquitur

#### a. The Court's Decision to Give the Instruction

Schorlemer's first point addresses the court's decision to give the instruction. In particular, he argues the trial court erred in giving a res ipsa loquitur instruction because there was no evidence that the sponge was in his control at the time of the alleged negligence, a prerequisite for the instruction.

We review the trial court's decision to submit an instruction with the abuse of discretion standard. *See Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex.1995); *Munoz v. Berne Group, Inc.*, 919 S.W.2d 470,

---

**4.** The laparoscopic sponge was gauze-like, cotton cloth measuring approximately four by ten inches in area.

471 (Tex.App.—San Antonio 1996, no writ). "Sound exercise of this discretion is particularly important in res ipsa cases in order to accommodate the wide range of situations which can arise in these cases." *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974).

▮▮▮ Res ipsa loquitur, meaning "the thing speaks for itself," is used only in certain limited cases where the circumstances surrounding the accident constitute sufficient circumstantial evidence of the defendant's negligence to support such a finding. *Bell,* 517 S.W.2d at 250. Specifically, res ipsa applies only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990). Furthermore, the likelihood of other causes does not have to be completely ruled out, but their likelihood must be "so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door." *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986) (citing *Bell,* 517 S.W.2d at 251). In order for res ipsa to be submitted to the jury, there must be evidence of both factors. *Jones v. Tarrant Utility Co.,* 638 S.W.2d 862, 865 (Tex. 1982); *Marathon Oil Co. v. Sterner,* 632 S.W.2d 571, 573–74 (Tex.1982).

▮▮▮ Texas courts generally view res ipsa loquitur to be inapplicable to medical malpractice cases. *Haddock,* 793 S.W.2d at 951 (collecting cases where res ipsa was held inapplicable). However, an exception to this practice exists for cases where the "nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony." *Id.* Examples of this exception include negligence in operating on the wrong body part and leaving surgical instruments or sponges in the body. *Wendenburg v. Williams,* 784 S.W.2d 705, 707 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Harle v. Krchnak,* 422 S.W.2d 810, 815 (Tex.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). Finally, the

applicability of res ipsa loquitur in medical malpractice cases is governed by the Medical Liability and Insurance Improvement Act:

> The common-law doctrine of res ipsa loquitur shall only apply to health care liability claims against health care providers or physicians in those cases to which it has been applied by the appellate courts of this state as of the effective date of this subchapter.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 7.01 (Vernon Supp.1998); *see Haddock,* 793 S.W.2d at 950–51 (explaining that as of August 29, 1977, the courts recognized the general rule and exceptions described here).

In this case, the evidence supports submission of the court's instruction. Schorlemer testified he performed Reyes' surgery, during which the sponge was left in her abdomen. He agreed, during cross examination, the sponges were under his management and control during that operation. He stated that he, along with the assisting surgeon, "put them in and t[ook] them out." Dr. Maxwell testified that the surgeon performing the operation, in this case Schorlemer, is in control of the sponges used during the procedure. Although the nurses perform the ancillary function of sponge counting, he testified, the ultimate responsibility for sponge removal lies with the surgeon. He further stated it is common practice for surgeons to follow a personal routine of insertion and removal to ensure no sponge is left behind. Finally, Dr. Caldarola, testifying for the defense, stated, "It is the responsibility of the surgeon to make sure that everything is removed from the patient."

Schorlemer argues that because, as a matter of law, he had no control, or shared control, over the sponges, the trial court erred in giving the res ipsa instruction. In support of his contention, he directs us to the testimony of the two assisting nurses, who testified that sole responsibility for the sponge rested with them. He also relies on *Rogers v. Duke,* where Rogers sued Dr. Duke after an emergency surgical operation where a sponge was left in Rogers, necessitating subsequent surgery. 766 S.W.2d 547, 547–48 (Tex.App.—Houston [1st Dist.] 1989, no writ). Duke filed a motion for summary

judgment and tendered proof by affidavits stating the nurses bore the responsibility for counting the sponges, pursuant to hospital policy, and that he was not even in the operating room at the time the patient was closed. *Id.* at 548. Rogers produced no controverting evidence in response to Duke's proof. *Id.* Finding no genuine issues of material fact remained as to any of Rogers' contentions, the court granted summary judgment; the court of appeals affirmed. *Id.*

■ Schorlemer's case differs from *Rogers* in that Reyes produced some evidence, and elicited testimony from the defense, that Schorlemer maintained control over the instrumentality at the time the alleged negligence occurred. While the record supports many of the facts enumerated by Schorlemer in support of his argument, the fact remains there was *some* evidence he maintained control. As such, the court acted within its discretion to give the instruction. The law requires that some evidence supports the instruction, not that the content of the instruction be proven as a matter of law, as Schorlemer contends. After all, res ipsa is a rule of evidence only; negligence and proximate cause still must be proved. *See Haddock,* 793 S.W.2d at 950. Accordingly, we overrule Schorlemer's first point of error.

### b. The Court's Rejection of Schorlemer's Proposed Charge

■ In his second point of error, Schorlemer contends the trial court erroneously rejected his proposed modification of the res ipsa instruction. His modification, he argues, would have limited any inference of negligence to his own breach of the duty of care, as opposed to a breach by any other actor. Schorlemer claims that the instruction given misstated the law and that it was a comment by the trial court on the weight of the evidence.

Save the addition of the first sentence, the court lifted its instruction from 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 51.10 (1994), which reads:

"Res ipsa loquitur" means the thing speaks for itself. In answering this question, you may infer negligence by a party but are not compelled to do so if you find that (1) the character of the occurrence is such that it would ordinarily not happen in the absence of negligence and (2) the instrumentality causing the occurrence was under the management and control of the party at the time that the negligence, if any, probably occurred.

Schorlemer would have inserted the following language in the first factor mentioned in the instruction:

(1) the character of the occurrence is such that it would ordinarily not happen in the absence of negligence *by that party* ....

(Emphasis added).

■ In reviewing an instruction the court gave the jury, we inquire whether the instruction is "proper." TEX.R. CIV. P. 277; *Atlantic Mut. Ins. Co. v. Middleman,* 661 S.W.2d 182, 187 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). An instruction is proper if it finds support in any evidence of probative value and if it might assist the jury in answering the questions submitted. *Louisiana & Ark. Ry. v. Blakely,* 773 S.W.2d 595, 598 (Tex.App.—Texarkana 1989, writ denied); *Johnson v. Whitehurst,* 652 S.W.2d 441, 447 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Whether an instruction misstates the law or constitutes an impermissible comment on the weight of the evidence is a question of law, reviewable de novo. *See City of Pearland v. Alexander,* 483 S.W.2d 244, 249 (Tex.1972); *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex.App.—Houston [14th Dist.] 1992, writ denied). If we decide the instruction was erroneous, we then inquire whether the error was harmless. TEX.R.APP. P. 44.1.

We hold the court gave a legally correct instruction. It appears that no limiting language is necessary under the first factor of the res ipsa doctrine because the second factor accomplishes Schorlemer's desired effect. Whereas the first factor of the doctrine permits the jury to infer negligence, it may do so only if it also finds the second factor, that the defendant is the negligent party, is met. *See Bell,* 517 S.W.2d at 251 (Tex.1974). In discussing the purpose of the second factor, the Texas Supreme Court stated in *Sterner,* "The requirement of control is necessary

to trace the negligence back to the defendant." 632 S.W.2d at 574. We therefore overrule Schorlemer's second point of error.

### c. Failure to Limit the Instruction

■ In point of error three, Schorlemer argues the court erred in failing to limit the scope of the res ipsa instruction. Because the instruction applies only in limited circumstances, like surgical instruments and sponges left in the body, it was inappropriate to make it available to the jury for its decisions about Reyes' remaining theories of negligence.

Reyes responds that Schorlemer waived any error because he neglected to raise the issue before the trial court. Reyes is correct. The only limitation Schorlemer requested pertained to the issue he argues in his second point of error. Accordingly, Schorlemer's third point of error is overruled. Tex.R.App. P. 33.1.

### 2. Sufficiency of the Evidence

■ In points of error four through nine, Schorlemer contends the evidence was both legally and factually insufficient to support the jury's findings of negligence, proximate cause, and damages. To sustain a medical malpractice claim of negligence, a plaintiff must prove by a preponderance of the evidence: (1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *White v. Wah*, 789 S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1990, no writ). We understand Schorlemer's complaints to apply to the last three elements.

In reviewing a "no evidence" point, we consider only the evidence and inferences tending to support the finding, and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). If any evidence of probative force supports the finding, we must uphold it. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). "[T]here is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). To assess factual sufficiency, we examine all of the evidence, both in support of and contrary to the jury's finding, and set aside the verdict only if it is so against the weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Regarding the element of breach, it was undisputed that Schorlemer performed an operation and left a sponge inside Reyes. The jury could have reasonably inferred that Schorlemer left the sponge inside Reyes, thereby breaching the standard of care.

There was also sufficient evidence of injury. Reyes testified that her post-operative condition caused her discomfort and pain. The pain apparently increased the longer the sponge remained in her abdomen. Surgery to remove the sponge revealed a large abscess, pus, and adhesions on her bowel. Reyes underwent three operations because of the sponge: one to remove it and two subsequent ones to remove adhesions. These operations caused further pain, discomfort, and scarring. Reyes' medical bills arising from these procedures totaled $38,739.94.

Finally, the evidence of proximate cause was sufficient and basically undisputed. Because the sponge was left inside Reyes, she suffered discomfort and pain and underwent surgery for its removal. A rational jury could infer from the description of the position and location of the adhesions encountered by Drs. Abuabara and Garcia during sponge removal that the adhesions were caused by the sponge. Dr. Maxwell further opined that the sponge was the likely cause of many of Reyes' adhesions, which caused her discomfort and pain.

We hold the evidence is both legally and factually sufficient to support the verdict under at least one of the negligence theories presented at trial, namely, failure to remove the sponge. *See Woodlawn Mfg., Inc. v. Robinson*, 937 S.W.2d 544, 548 (Tex.App.—Texarkana 1996, writ denied). Accordingly, we overrule points of error four through nine.

### 3. Segregation of Damages

In his final point of error, Schorlemer argues the trial court erred in submitting damages in broad form because the proven medical expenses damages relate to res ipsa loquitur and not the other negligence theories. Since the res ipsa instruction was proper, as discussed above, we overrule this final point.

### Conclusion

We affirm the trial court's judgment.