**Della HARRIS, Individually and on Behalf of the Estate of Robert Harris**

v.

**NATIONAL PASSENGER RAILROAD CORPORATION, d/b/a Amtrak, Southern Pacific Transporation Company, and Resco Holdings, Inc. (Successor–in–Interest to Pullman Standard) Fred Hanna**

No. CIV.A. 1:95–CV–786.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 12, 1999.

Michael R Ramsey, Joe J Fisher, II, Provost & Unmphrey, Beaumont, Fred P Coogan, Bell Turney Coogan & Richards, Austin, TX, for Plaintiff.

Daniel V Flatten, Jenkins & Gilchrist, Houston, TX, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before this Court is Defendant's Motion for Summary Judgment. This suit is based on the unwitnessed exits of two elderly passengers on Amtrak trains. In separate incidents, Robert Harris and Victor Gust somehow exited their trains and died from the falls they sustained. This suit was initially filed on behalf of Robert Harris, later, Alois Drenzek, the appointed representative of the estate of Victor Gust, intervened. Both plaintiffs bring causes of action for negligence, strict products liability, and violations of the Texas Deceptive Trade Practices Act.

### I. BACKGROUND

Robert Harris boarded Amtrak train No. 1 in Houston, bound for Los Angeles, California on September 14, 1994. He was 85 years old. During the journey, no special arrangements were made for his care and none were requested. Harris was assigned to car No. 31038. The next morning, two passengers informed Lori Scott, the train attendant for car No. 31038, that Harris was missing. (Defendant's Motion for Summary Judgment Exhibit J). Ultimately, Harris was found dead on the right-of-way near Yuma, Arizona. No one saw or heard Harris exit the train. One employee, Judith Radcliff, a car attendant from the neighboring car, found a window open and a step stool next to it otherwise, according to affidavits from Amtrak employees, all vestibule doors were latched and the windows on the doors were closed.

(Defendant's Motion for Summary Judgment Exhibits J through N).

Victor Gust boarded an Amtrak train in Milwaukee, Wisconsin bound for Phoenix, Arizona on March 26, 1994. He was 82 years old. That train connected in San Antonio, Texas with Amtrak train No. 1 bound for Los Angeles via Phoenix—the same route as Harris. Gust was assigned to car No. 2111. There were no special arrangements made for his passage. Sometime on the morning of March 28, 1996, Gust exited the train. He was found on the right-of-way by a passing Southern Pacific Freight Train 61 miles outside of San Antonio. After being transported to a hospital, Gust died as a result of his injuries on April 14, 1996. As with Robert Harris, no one saw or heard Gust leave the train. According to affidavits from Amtrak employees, all vestibule doors were locked and latched and all windows were closed. (Defendant's Motion for Summary Judgment Exhibits B through F).

The facts in each case are virtually identical as both men were seated in the same model of railway car. Both cars are Superliner II cars. Each has a double deck configuration with entry doors and a vestibule, restrooms, luggage space and some seating on the first level. The principle seating is in the second (upper) level. There are three possible points of exit: the door at the end of the train, the passenger windows, and the vestibule doors. The door located in the rear of the last car is locked with a key. The passenger windows are sealed but can be opened in case of an emergency. If opened, the entire window must be removed and resealed by Amtrak personnel. The passenger windows cannot be opened for ventilation. According to the affidavits of Amtrak employees in both cases, none of the passenger windows was opened. This leaves the vestibule doors as the likely point of exit.

The vestibule doors are located in the middle of the car on each side of the train. The doors are not locked, but are secured by a handle that latches closed and a "dog latch", an independently operating latch at the top right hand corner of the door, which also latches the door closed. The doors can be opened without a key because they serve as emergency exits in case of derailment, fire, or other emergency. In order to open the vestibule doors, the dog latch must first be disengaged, the door handle must then be physically operated, and the door must be pulled inward. The doors also have a window which can be opened. The vestibule doors are marked with a sign below the window that reads: "Caution: For your own safety, do not open door or window." Also, an announcement warning passengers not to open doors or windows is regularly made except during the hours of 10:00 p.m. to 7:00 a.m.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party must identify evidence that establishes the absence of any genuine issue of material fact, *id.* at 323, 106 S.Ct. 2548, and the court reviewing a grant of summary judgment must evaluate the facts in the light most favorable to the nonmovant. *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1451 (5th Cir.1995). The nonmovant's burden is not satisfied with some metaphysical doubt as to the material facts, conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). While all factual controversies are resolved in favor of the nonmovant, in the absence of any proof, the Court does not assume that the nonmoving party could or would prove the necessary facts. *Little,* 37 F.3d at 1075, (citing *Lujan v.*

*National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). The nonmoving party may not rely on the mere allegations but must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

## III. ANALYSIS

The complaint and plea in intervention assert claims for negligence, strict product liability and violations of the Texas Deceptive Trade Practices and Consumer Protection Act, (DTPA). Tex. Bus. & Com. Code § 17.01 *et seq.* (Vernon 1994). Each cause of action, centers around Amtrak's use of the vestibule doors. Plaintiffs claim Amtrak was negligent in operating its trains with doors which can be opened at high speed, in failing to provide adequate security, and in failing to warn plaintiffs of the dangers they faced while riding the train. Plaintiffs also claim the Superliner II car is defective because it lacks an automatic locking mechanism which would lock the vestibule doors when the train is moving. Finally, plaintiffs allege defendant violated the DTPA through misrepresentations that the train was safe when it was not. While this court is required to give plaintiffs all inferences in their favor in determining whether there is a genuine issue of fact, there is no evidence that any act or omission of Amtrak caused the plaintiffs to exit the train as the circumstances of their exit are completely unknown.

■ "There can be no recovery of damages by an aggrieved party against another unless the harm was caused by the other's actions." *Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 935 (Tex.App.—Texarkana 1997, no writ) (quoting *Wheaton Van Lines, Inc. v. Mason,* 925 S.W.2d 722, 728 (Tex.App.—Fort Worth 1996, writ denied)). Negligence requires a showing of proximate cause. *Purina Mills,* 948 S.W.2d at 935. Proximate cause has two factors: cause in fact and foreseeability. *Id.* Products liability and DTPA violations require a showing of producing cause. *Id.* Both producing cause and proximate cause require cause in fact. *Id.* at 936. Causation in fact requires that the defendant's conduct be a substantial factor in bringing about the plaintiff's damages. *Id.* "Liability cannot turn on speculation or conjecture. Establishing causation requires that the plaintiff bring forth sufficient facts so that the evidence, and its logical inferences, support the reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about the injury. Causation must be based on a reasonable probability, rather than a mere possibility." *Id.* (citations omitted).

■■ Causation may be established by direct or circumstantial evidence as it is a question of fact for the jury and the jury has broad latitude to infer proximate cause from the evidence and circumstances surrounding an event. *Gutierrez v. Excel Corp.,* 106 F.3d 683, 687 (5th Cir.1997). Cause in fact is not established by evidence that a condition which made an injury possible existed. *Id.* at 688 (citing *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 165 (Tex.App.—Waco 1995, no writ)). "All that is required before there can be a finding of ultimate fact is proof of a causal connection beyond the point of conjecture or mere possibility." *Purina Mills,* 948 S.W.2d at 936 (citing *Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703, 706 (Tex.1970)). Absolute certainty is not required nor is the plaintiff required to exclude every other possibility. *Purina Mills,* 948 S.W.2d at 936. Likewise, under a strict products liability theory, a plaintiff must show more than the fact that an accident occurred. *Selig v. BMW of N. America, Inc.,* 832 S.W.2d 95, 100 (Tex. App.—Houston [14th Dist.] 1992, no writ).

Despite numerous depositions and voluminous discovery, plaintiff has no evidence of how Mr. Harris or Mr. Gust exited the train. From the affidavits and evidence produced by the defendant, it is clear that there are three possible exits: the passenger windows, the door on the last car of

the train, and the vestibule doors on each car. There is no evidence that any of these points of exit were open. In fact, Amtrak has presented evidence through affidavits that the exits were closed. None of the passenger windows which serve as emergency exits had to be closed by Amtrak personnel; the last door of the train was locked with a key, and the vestibule doors were all secured by the two latches. Yet the fact remains that Gust and Harris somehow exited the train.

Plaintiffs argue that the defendant's affidavits create a fact issue because they foreclose the possibilities that Harris or Gust used the two other means of exit. However, assuming they did exit through the vestibule doors, this alone is not evidence of Amtrak's negligence. According to affidavits from Amtrak employees, the doors were locked and required affirmative action to open. In their response, plaintiffs infer that the Amtrak employees must be wrong because the vestibule door had to open at some point in order for the plaintiffs to exit the train. The affidavits however, only establish that the doors were locked and latched when the employees saw them. There is nothing to contravene this. There is no evidence that Amtrak employees left the doors open or unlatched or even had a habit of doing so. The only argument that plaintiffs present as to Amtrak's negligence is the fact that Amtrak's vestibule doors can be opened when the train is moving at high speed. Coupled with the fact that there is no evidence of how or why the plaintiffs exited the train, it is clear that the plaintiffs have not produced any evidence that an act or omission on the part of Amtrak caused the plaintiffs to exit the train or caused the doors to open.

Plaintiffs' only evidence in the summary judgment response is an affidavit from Frank Raposa, a professional engineer who is familiar with the particular trains in service. In his affidavit, Raposa states that he is familiar with the train and that Amtrak operates trains with devices which automatically lock the trains doors when the train is moving at high speed. It is his opinion, that the failure to use these automatic locking devices on the doors and windows is a design defect which is unreasonably dangerous. (Raposa Affidavit, Exhibit 1, Plaintiff's Response). While it may be that an automatic locking mechanism would have prevented the falls, the fact remains that the plaintiffs have failed to prove that the dangerous condition was the cause in fact of the plaintiff's injuries.

Three other courts have dismissed cases on identical facts. In *Eischeid v. National Railroad Passenger Corp.*, husband and wife sued Amtrak for negligence for damages after the husband awoke in the middle of the desert with no recollection of how he got there. *Eischeid v. National R.R. Passenger Corp.*, No. CV–95–0293, at \*11–12 (C.D.Cal. Jan. 31, 1996), *aff'd, Eischeid v. National R.R. Passenger Corp.*, 116 F.3d 1485, 1997 WL 355956 (9th Cir. 1997) (table opinion). The couple boarded the Los Angeles bound train in Temple, Texas—the same route as Harris and Gust. As in the present case, Amtrak employees—conductors and attendants—conducted inspections at various intervals and found no vestibule door (or window on the door) unlocked or unlatched. The district court granted summary judgment holding that the plaintiffs failed to produce any evidence that Amtrak's negligence caused Mr. Eischeid to exit the train. As to the Eischeid's product liability claim, the court concluded that there was no evidence that the alleged failure to equip the vestibule doors with automatic locks caused the injuries. *Id.* at \*11–12.

The *Eischeid* court relied on *Donnelly v. National R.R. Passenger Corp.*, 16 F.3d 941 (8th Cir.1994). In that case, Hampton, a 73 year old woman was found dead along the tracks with injuries consistent with a high velocity impact with the ground. As with the above cases, there were no witnesses to the fall and Amtrak employees stated that the doors or windows were closed or secure. The Circuit court af-

firmed a jury verdict on the negligence claim in favor of the defendant and upheld the district court's decision to grant summary judgment on the strict liability claim and the application of res ipsa loquitur. The court held there was no evidence that the alleged design defect, the failure to equip the door with an automatic locking mechanism, proximately caused the plaintiff's death. "Even if the door should have been locked, the door could not have been opened unless someone affirmatively lifted the dog latch, operated the door handle and then pulled the door open. In other words, the failure to lock the door could not have caused Hampton to exit the train." *Id.* at 945.

In *Newkirk v. National R.R. Passenger Corp.*, 618 F.Supp. 1422 (S.D.Ill.1985), *aff'd*, 805 F.2d 1038 (7th Cir.1986), like the present case, the exit from the train was not witnessed by anyone. The Circuit court upheld the district court's grant of summary judgment. There, the plaintiff relied exclusively on res ipsa loquitur to infer negligence. The court held that res ipsa loquitur was inapplicable because the plaintiff was unable to eliminate the conjecture that the accident would have resulted from an act of the plaintiff—a requirement under Illinois law. *Id.* at 1424. Further, the plaintiff presented an affidavit stating that the defendant was negligent in not securing the vestibule doors with a keyed lock, however, the court dismissed the argument holding that the failure to lock the doors was not the cause of the injury. "Assuming the plaintiff's position is correct, the plaintiff has failed to demonstrate causation because the doors could not have been opened without someone affirmatively lifting the safety handle and unlocking the snap-lock." *Id.* at 1425.

More recently however, a California state court found Amtrak liable for the apparent falling death of one of its passengers. *Killsgaard v. Amtrak*, No. 93318, slip op. (Super. Ct. Cty. Monterey June 12, 1997). In *Killsgaard*, an epileptic with a compulsion to find a place of security (like a bathroom) during a seizure, was found dead next to the tracks. After a bench trial, the Superior Court, found by a preponderance of the evidence that his death was caused by falling from one of the side doors which he had mistaken for a bathroom. *Id.* at 3. The court found Amtrak breached its duty of care as a common carrier to provide safe passage by failing to secure vestibule doors by something other than a dog latch. More significantly, the court noted was that there had been a series of similar occurrences with older and/or mentally confused persons who had fallen from moving trains. *Id.* at 4. Unlike the present case, there was evidence that the victim might have been disoriented and mentally confused because of his propensity towards epileptic seizures. Here, there is no evidence that either Harris or Gust were confused, disoriented, or disabled in any way so that they confused the vestibule door for another door. In the present case, plaintiffs cannot even present a theory as to how or why the plaintiffs exited the train.

■ Given the summary judgment evidence before the court, plaintiffs have failed to show that any act or omission was the cause in fact of their injuries. Specifically, there is no evidence that a negligent act on the part of Amtrak could have opened the vestibule doors. There is no evidence that the doors were unlatched or open. Without this, clearly some affirmative act on the part of the plaintiffs or a third party was required in order for plaintiffs to exit the train. The Raposa affidavit which merely presents an expert's conclusion that there is a dangerous condition on the train, fails to prove that the condition was the cause in fact of plaintiffs injuries. While the facts of this case are highly suspicious, the law requires more than suspicions to avoid summary judgment.

## IV. RES IPSA LOQUITUR

Although the plaintiffs do not argue this in their response, a discussion of res ipsa

loquitur seems merited by the facts of the case and is raised in the pleadings. "The purpose of res ipsa loquitur is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Turbines, Inc., v. Dardis,* 1 S.W.3d 726, 740 (Tex.App.— Amarillo, 1999, pet.filed) (citing *Jones v. Tarrant Utility Co.,* 638 S.W.2d 862, 865 (Tex.1982)).

■ Under Texas law, the application of res ipsa loquitur requires two factors. First, the character of the accident is such that it would not ordinarily occur in the absence of negligence; second, the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Schorlemer v. Reyes,* 974 S.W.2d 141, 145 (Tex.App.— San Antonio 1998, pet. denied) (citing *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990)); The likelihood of other causes does not have to be completely ruled out, but their likelihood must be "so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door." *Schorlemer,* 974 S.W.2d at 145 (citing *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986)). Res ipsa loquitur is a doctrine of evidence, not a legal cause of action. It allows a plaintiff to get to a jury with only circumstantial evidence, however, a plaintiff must first meet the above requirements. While res ipsa loquitur alleviates the plaintiff of the burden of directly proving causation, it is only applicable where the likelihood of causes other than the defendant are ruled out, and it does not relieve the plaintiff from proving other elements such as proximate cause.

■ In the present case, plaintiff cannot show that the door was under the exclusive control of the defendant. This requirement is meant to exclude the possibility that someone other than the defendant caused the accident. In the present case, anyone—third-party, an agent of the defendant, or the plaintiffs themselves— could have manipulated the vestibule door latch, dog latch, or window and caused the plaintiffs to exit the train. The possibility of someone other than the defendant meddling with the door precludes the application of the doctrine. *See Lucas v. Titus Cty. Hosp. Dist.,* 964 S.W.2d 144, 156 (Tex. App.—Texarkana 1998) *pet. denied per curiam* 988 S.W.2d 740 (finding a chair located in a public waiting area was not subject to hospital's exclusive control because it was possible that someone other than the hospital broke the chair before plaintiff was injured); *Wal–Mart Stores Inc. v. Lerma,* 749 S.W.2d 572, 574 (Tex.App.— Corpus Christi 1988, no writ) (recovery under res ipsa loquitur only allowed when evidence shows the instrument was under defendant's control and that it has not been "meddled with" by plaintiff or the public). Aside from the control issue, the plaintiff cannot reduce the likelihood of other causes leaving only the defendant's negligence. The fact that the door could be opened by anyone, leaves open the significant possibilities of the plaintiff's own negligence or a third-party's negligence as a cause for the accident.

The other railroad cases, *Eischeid, Newkirk,* and *Donnelly,* all considered this omission significant in denying the applicability of res ipsa loquitur. *Eischeid* also held that the doctrine of res ipsa loquitur did not apply because the plaintiff was unable to show that the vestibule door was in the exclusive control of the defendant and failed to present evidence that the incident was not due to any voluntary act of the plaintiff. *Eischeid,* at 11–12. *Donnelly* also affirmed the district court's decision to not apply res ipsa loquitur because the door was not in the exclusive control of the defendant and there were reasons other than the defendant's negligence that could have caused Hampton to exit the train—such as Hampton's own negligence. 16 F.3d at 945

Since the causation issue is fatal to the plaintiffs' claims there is no need for the court to reach the issue of whether the DTPA claims of both men survived their deaths or whether Drenzeck has standing for bring his intervention under Texas law.

## V.  CONCLUSION

While the Court is sympathetic to the plight of the plaintiffs and the mysterious facts surrounding their deaths, the law will not impose liability on the defendant unless the plaintiffs can prove their cases. The apparent series of unexplained falls from Amtrak trains is cause for serious concern [1] however, the fact remains that despite the extensive discovery, there is no evidence as to how Harris or Gust exited the train and the possibility that their own negligence or that of another passenger contributed to their death precludes application of res ipsa loquitur.

For the above-stated reasons, the Defendant's Motion for Summary Judgment is GRANTED.

---

1.  For an overview of the problem, see *Inside Edition: Amtrak Train Doors* (Kingworld Pro- ductions, Inc., Television Broadcast, Sept. 20, 1995).