# Supreme Court of Texas

No. 22-0030

Schindler Elevator Corporation,
*Petitioner*,

v.

Darren Ceasar,
*Respondent*

On Petition for Review from the
Court of Appeals for the Ninth District of Texas

**Argued February 1, 2023**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

Plaintiff Darren Ceasar alleges he was injured in a hotel elevator that ascended rapidly, then came to an abrupt stop. He sued the building's elevator-maintenance contractor, Schindler Elevator, and the jury found for Ceasar. The main issue in this appeal is whether the trial court abused its discretion by including in the jury charge an instruction on res ipsa loquitur. We conclude that it did. We hold that Ceasar presented no evidence to support the doctrine's first element—the type of accident is such that it would not ordinarily occur absent negligence—

because the relevant testimony of Ceasar's elevator expert is conclusory. We further hold that the instruction's submission was harmful in this case and address Schindler's remaining challenges to the judgment.

We reverse the part of the court of appeals' judgment relating to the trial court's judgment on the jury's verdict for Ceasar, and we remand to the trial court for a new trial. We affirm the part of the court of appeals' judgment relating to discovery sanctions that the trial court imposed on Schindler.

# I

Darren Ceasar, a barber from Louisiana, checked into Beaumont's MCM Eleganté Hotel for a vacation, went up to his seventh-floor room briefly, then left the hotel to get a pizza.[1] Upon returning, Ceasar took the elevator back up to his room.

As the elevator ascended, it started speeding up, went past the seventh floor to the ninth floor, came to an abrupt stop, and started shaking. The abrupt stop jarred Ceasar's body, but the events transpired so quickly that he is unsure whether he fell down or collided with the side of the elevator. Ceasar pushed buttons to open the elevator doors, but they remained closed. He also activated the elevator's alarm, but the alarm was not loud enough and failed to summon help. After a few minutes, Ceasar called 911 from his cell phone. Firefighters arrived within half an hour and extracted him.

After settling in to a new room on the main floor, Ceasar started to feel pain in his neck and back. He drove to a hospital in nearby Port

---

[1] We take Ceasar's trial testimony as true, as we must.

Arthur, where he was examined and then prescribed pain medication. A few months after the incident, he sought care from a neurosurgeon in Louisiana, who eventually performed lumbar-disc surgery on Ceasar. He was also treated by a psychiatrist for PTSD.

Ceasar sued the Eleganté and its elevator-maintenance contractor, Schindler. After the trial court granted a final summary judgment for the Eleganté, Ceasar's claims against Schindler proceeded to a week-long jury trial. Schindler's counsel acknowledged in opening argument that "something happened" when the elevator "didn't stop at 7. It stopped at 9." But Schindler challenged whether the incident was really as dramatic as Ceasar portrayed it to be. The other main issues at trial were whether the incident was caused by Schindler's negligent maintenance of the elevator and whether Ceasar's injuries predated the incident.

In a 10–2 verdict, the jury answered "yes" to the question whether Schindler's negligence proximately caused the elevator incident and awarded Ceasar more than $800,000 in actual damages.[2] Schindler appealed, raising several discrete issues that challenged the jury charge, the court's admission and exclusion of evidence, its management of discovery, and its imposition of discovery sanctions on Schindler. The court of appeals affirmed.[3] We granted Schindler's petition for review.

---

[2] A question on gross negligence was also submitted. The jury answered that question "no".

[3] 666 S.W.3d 25 (Tex. App.—Beaumont 2021).

3

## II

We first address Schindler's challenge to the court's submission of a jury instruction on res ipsa loquitur —Latin for "the thing speaks for itself". Over Schindler's objection, the instructions in the jury charge included this paragraph:

> You are instructed that you may infer negligence by a party but are not compelled to do so, if you find that the character of the accident is such that it would ordinarily not happen in the absence of negligence and if you find that the instrumentality causing the accident was under the management and control of the party at the time the negligence, if any, causing the accident probably occurred.

We have approved this exact language for a res ipsa instruction to be given in appropriate cases.[4] But Schindler argues that this is not an appropriate case because the evidence does not support the submission of a res ipsa instruction.

## A

Res ipsa is an evidentiary doctrine that "relieve[s] the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident."[5] The doctrine applies only rarely, when the way in which an accident occurred furnishes circumstantial evidence of the defendant's negligence.[6] The classic example of a case

---

[4] *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 257 (Tex. 1974).

[5] *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982).

[6] *See Bell*, 517 S.W.2d at 250 ("[M]eaning 'the thing speaks for itself,' . . . [res ipsa] has come to signify that in certain limited types of cases[,]

that "invite[s] *res ipsa loquitur* treatment" is when a foreign object is left in a patient after surgery.[7]

Our caselaw has articulated two mandatory elements for the doctrine's application:

(1)  the character of the accident must be such that it would not ordinarily occur in the absence of negligence; and

(2)  the instrumentality causing the injury must be shown to have been under the management and control of the defendant.[8]

To request a res ipsa instruction, "the plaintiff must produce evidence from which the jury can conclude, by a preponderance of the evidence, that both the 'type of accident' and 'control' factors are present."[9] In other words, the plaintiff must introduce sufficient evidence to "survive [a] no-evidence . . . challenge[]" on the question whether the circumstances of the accident alone provide sufficient evidence of negligence.[10] Contrarily, a defendant's challenge to a res ipsa

---

the circumstances surrounding an accident constitute sufficient circumstantial evidence of the defendant's negligence to support such a fact finding."); *see also Porterfield v. Brinegar*, 719 S.W.2d 558, 559 (Tex. 1986) ("*Res ipsa loquitur* means simply that the nature of the occurrence itself furnishes circumstantial evidence of negligence."); *id.* ("Although an accident is no evidence of negligence, the character of the accident, and the circumstances and proof attending it, may reasonably lead to the belief that without negligence the accident would not have occurred."); *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex. 1982) (characterizing the cases to which res ipsa applies as "limited").

[7] *Walters v. Cleveland Reg'l Med. Ctr.*, 307 S.W.3d 292, 297 (Tex. 2010).

[8] *See, e.g.*, *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990) (citing *Bell*, 517 S.W.2d at 251).

[9] *Bell*, 517 S.W.2d at 252.

[10] *Id.* at 251.

instruction is "essentially [a] 'no evidence' point[]".[11]

Evidentiary support for the "type of accident" and "control" factors is the minimum requirement for a res ipsa instruction and will not entitle the plaintiff to an instruction in every case.[12] "[I]n any Res ipsa case, the particular facts surrounding the event are extremely important."[13] That means that determining the applicability of res ipsa is a case-specific exercise. In two cases involving injuries to a worker caused by exposure to gas or chemicals at the defendant's plant, we concluded that res ipsa applied in one[14] but not the other[15] because of differences in the record evidence. Similarly, though we have previously affirmed a lower court's application of res ipsa in a case involving a free-falling elevator,[16] we have also held "that the mere occurrence of an unintended acceleration incident [involving a car] is no evidence that a

---

[11] *Id.* at 253.

[12] The American Law Institute has explained:

A risk of error is involved in permitting such an inference . . . . But there is a risk of error whenever circumstantial evidence is relied on in reaching findings of negligence. To be sure, res ipsa loquitur does produce an element of discomfort, inasmuch as the defendant can be found negligent without any evidence as to the nature or circumstances of the defendant's actual conduct. This discomfort leads to some circumspection in the application of res ipsa loquitur.

RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYS. & EMOT. HARM § 17 cmt. a (AM. L. INST. 2010).

[13] *Bell*, 517 S.W.2d at 248.

[14] *Id.* at 253.

[15] *Sterner*, 632 S.W.2d at 573-574.

[16] *Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 684 (Tex. 1965).

vehicle is defective."[17] A res ipsa instruction should not be given when it is used to suggest that liability for an accident can be imposed without negligence.

With that background we turn to the evidence in this case.

**B**

Schindler challenges the evidence to support each element of res ipsa. Because this is "essentially a no evidence point", we apply the same standard of review and look to the record to see if it contains "more than a mere scintilla" of evidence to support each one.[18] "The record contains more than a mere scintilla of evidence when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Conversely, the record contains less than a scintilla when the evidence offered to prove a vital fact's existence is 'so weak as to do no more than create a mere surmise or suspicion.'"[19] We view the evidence in the light most favorable to Ceasar, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not."[20] Because we conclude that the evidence offered to support the first element of res ipsa is legally insufficient, we need not address the second element.

The first element is that the character of the accident must be

---

[17] *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004).

[18] *See, e.g.*, *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

[19] *Id.* at 658 (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

[20] *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

such that it would not normally occur in the absence of negligence.[21] Ceasar relies on the testimony of his elevator expert, J.R. Freeman, to satisfy his burden of proof on this element.[22] Freeman testified three times on direct or redirect examination that an elevator's behaving the way Ceasar described ordinarily occurs due to negligence in the elevator's maintenance. But in each instance, his testimony was conclusory.

Conclusory testimony "is considered no evidence."[23] "An expert's testimony is conclusory when the expert asserts a conclusion with no basis";[24] when "'the basis offered provides no support' for the opinion";[25] or when the expert "offers only his word that the bases offered to support his opinion actually exist or support his opinion."[26] An expert "must link his conclusions to the facts" and "explain[] the basis of his assertions."[27] "Asking the jury to take the expert's word for it because of his status as

---

[21] *Haddock*, 793 S.W.2d at 950 (citing *Bell*, 517 S.W.2d at 251).

[22] Expert testimony is not always required to prove this element, but it "is clearly admissible and may be necessary to the plaintiff's case." *Bell*, 517 S.W.2d at 252.

[23] *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 222 (Tex. 2019) (citing *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009)).

[24] *Id.* at 223 (citing *Pollock*, 284 S.W.3d at 818).

[25] *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 787 (Tex. 2020) (quoting *Pollock*, 284 S.W.3d at 818).

[26] *Id.* at 790 (quoting *Windrum v. Kareh*, 581 S.W.3d 761, 769 (Tex. 2019)).

[27] *Bombardier Aerospace Corp.*, 572 S.W.3d at 223 (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

an expert will not suffice."[28]

Ceasar's counsel first asked Freeman on direct examination whether it is "normal operation for a properly functioning elevator to go to the wrong floor and even above the top of the top floor". Freeman responded, simply: "No, it's not." Later in the same examination, counsel asked Freeman to opine "[a]s an elevator expert" whether "the type of accident that happened here normally occur[s] when maintenance is being done properly". Freeman responded, "[n]o, it wouldn't" and then added that only two to three "callouts" (service calls) per year are normal for a properly maintained elevator.

On cross-examination, Schindler's counsel elicited from Freeman other possible explanations for the incident Ceasar described.

> Q. Okay. Now, there's lots of reasons that an elevator can have a harder than normal stop. Would you agree?
>
> A. Yes.
>
> Q. Give me some examples.
>
> A. A clip in a door lock that you mentioned earlier.
>
> Q. Yes, sir.
>
> A. A run up on a final limit.
>
> Q. Okay.
>
> A. A stop switch being engaged.
>
> Q. By a passenger inadvertently or otherwise?
>
> A. Or key -- yes.
>
> Q. So, there's a lot of ways an elevator can stop?
>
> A. That is correct, sir.

---

[28] *Id.* (citing *Pollock*, 284 S.W.3d at 816).

Later, Schindler's counsel asked whether "elevators [can] get stuck without anybody being negligent". Freeman acknowledged that, "[y]es, that can happen."

Ceasar's counsel tried to rehabilitate Freeman's testimony on redirect examination by asking whether "[a]n abrupt stop like the one that Mr. Ceasar experienced . . . happen[s] when elevators are properly maintained". Freeman responded, "[n]o, it doesn't"—but again gave no further explanation.

Freeman thus testified three times that a properly maintained elevator would not go to the wrong floor or stop abruptly, while also agreeing with defense counsel's statement that "there's lots of reasons" why an elevator may make a "harder than normal stop." He never reconciled these statements or explained the basis for his testimony on direct and redirect examination other than to say that only two to three callouts per year are typical for a properly maintained elevator. Even if it is true that a properly maintained elevator malfunctions only two to three times per year, it does not follow that a fourth or subsequent malfunction must be due to improper maintenance.

To satisfy the first element of res ipsa, Ceasar was required to do more than just "[a]sk[] the jury to take [Freeman's] word for it because of his status as an expert".[29] Ceasar was required to elicit from Freeman the basis for his assertions that properly maintained elevators ordinarily do not malfunction, especially in light of Freeman's own concessions on cross-examination that negligent maintenance is not the

---

[29] *Id.*

10

only potential cause of an abrupt stop. Because the only evidence Ceasar offered to support the first element of res ipsa is conclusory testimony, there is no evidence to support a finding that an elevator ordinarily does not malfunction in the way Ceasar alleges in the absence of negligence, and the trial court erred by submitting the instruction.

## C

The court of appeals declined to address the merits of Schindler's challenge to the res ipsa instruction because it concluded that Schindler had failed to establish that the instruction "probably caused the rendition of an improper judgment."[30] The court pointed out that the charge included a separate instruction on circumstantial evidence[31] and reasoned that "[b]ased on the evidence presented at trial, the jury could have decided that Schindler was negligent from either the direct or circumstantial evidence in the case."[32] That is, "[t]he jury could have believed the testimony provided by the Plaintiff's expert that Schindler's inadequate or improper maintenance and repair to the control board caused the accident even without relying on the *res ipsa loquitur*

---

[30] 666 S.W.3d at 61; *see* TEX. R. APP. P. 44.1(a)(1), 61.1(a).

[31] This instruction states:

The term "circumstantial evidence" means a fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

[32] 666 S.W.3d at 61.

11

instruction."[33] We disagree that the inclusion of the res ipsa instruction in the charge was harmless.

Ceasar presented two theories of negligence to the jury. The first was res ipsa, which, if proper, would have enabled the jury to infer negligence purely from the way that the accident happened. The second theory, which was also presented through the testimony of expert Freeman, was that Schindler performed negligent maintenance on a component called the SDI board, which controls the elevator's position and velocity. Schindler's service-call records reflected that the SDI board for the elevator had malfunctioned several times in the months leading up to Ceasar's accident, that Schindler had replaced the board ten days before the accident, that Schindler had adjusted the board again only two days before the accident, and that the board was "not communicating" on some additional occasions in the first few months after the accident. Freeman testified that this failure rate was not typical for an SDI board. He opined, based on this service history, that Schindler "couldn't figure out what was wrong with [the board] and just kept patching it or putting a Band-Aid on it and trying things."

"Charge error is generally considered harmful if it relates to a contested, critical issue."[34] Both of Ceasar's negligence theories were

---

[33] *Id.*

[34] *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009)); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("An improper instruction is especially likely to cause an unfair trial when the trial is contested and the evidence sharply conflicting . . . .").

hotly contested by Schindler, and the jury returned a 10–2 verdict.[35] Ceasar's res ipsa theory was also critical to his case. In closing argument, Ceasar's counsel told the jury that res ipsa lowers Ceasar's burden of proof.[36] Counsel said that the case involves "a little bit of unique law" because Ceasar "[doesn't] have to prove exactly how [the elevator accident] happened." Counsel directed the jury to the res ipsa instruction, which he characterized as setting forth "a little bit lighter" standard than negligence. Counsel then stated:

> All we have to prove in here is that, hey, an elevator doesn't go up past the floor it's supposed to stop on and come to an abrupt stop unless someone neglected -- there was negligence involved, whatever it was.

Finally, the presence of the circumstantial-evidence instruction cannot render the res ipsa instruction harmless. The circumstantial-evidence instruction permits the jury to find any fact by making fair and reasonable inferences from evidence presented.[37] But the res ipsa instruction permits the jury to find negligence when there is *no evidence* that the defendant breached a duty of reasonable care, only evidence that the accident would not ordinarily have happened the way it did absent negligence. The instructions are not the same.

We hold that the improper submission of Ceasar's res ipsa theory

---

[35] *See In re Est. of Poe*, 648 S.W.3d 277, 292 (Tex. 2022) (holding that an erroneously submitted jury question was harmful error and noting that evidence related to the question was hotly contested and that the jury returned a 10–2 verdict).

[36] *See Glenn v. Leal*, 596 S.W.3d 769, 772 (Tex. 2020) (stating that the standard of negligence a jury is asked to apply is a critical issue).

[37] *See supra* note 31.

13

probably caused the rendition of an improper verdict. Accordingly, we reverse the court of appeals' judgment and remand for a new trial.

## III

We briefly address Schindler's remaining arguments.

## A

Schindler complains about the trial court's ordering Schindler to produce documents during trial and its imposition of a $25,000 sanction on Schindler (not Schindler's counsel) for failing to produce the documents during pretrial discovery. A letter ruling by the trial court provides background and explains the reason for the court's decision.

According to the court, Ceasar specifically requested in discovery Schindler's policy or procedure manuals for servicing elevators as well as its work orders, tickets, and service requests for the elevators at the Eleganté. Schindler failed to identify, disclose, or produce a policy manual and certain work orders that were responsive to the requests. The existence of the missing documents came to light during the deposition of Schindler's corporate representative, James Hoover. After the deposition, Ceasar's counsel requested the missing documents from defense counsel by email. Several months later, Schindler produced some, but not all, of the work orders, while maintaining that it did not have any policy manuals responsive to the request.

At the pretrial conference, the court admonished both sides to make sure that all relevant evidence had been tendered to opposing counsel before the commencement of trial. Nonetheless, it emerged during Hoover's trial testimony that a policy manual does, in fact, exist and that there are additional relevant work orders that were never

14

produced during discovery. Defense counsel eventually obtained those items from Schindler and turned them over to Ceasar.

The court determined that the fault lay with Schindler, not Schindler's counsel. The court found that counsel had timely forwarded the pretrial discovery requests to Schindler, that counsel had reasonably relied on the representations made to him by Schindler, and that counsel had learned of the missing documents' existence during trial.

The court concluded that Ceasar had not waived its request for sanctions because the existence of the missing documents was not established until mid-trial. The court further concluded that Schindler violated Texas Rule of Civil Procedure 193.1[38] by failing to supplement its discovery responses after Ceasar's post-deposition email and by failing to inform its counsel of the documents' existence. The court also found that Schindler had several opportunities to remedy the deficiencies in its earlier discovery responses.

Though Ceasar requested sanctions in the amount of $100,000, the court found that $25,000 was appropriate. The court explained that it was not imposing a greater amount "because of the commendable efforts by [Schindler's] attorney . . . to remedy the discovery violation mid-trial." The court further found "that a lesser sanction would have been ineffective given the circumstances of the violation, the volume of litigation in which Schindler participates across various jurisdictions, and the amount of the sanction in comparison with the overall cost to defend the underlying litigation."

---

[38] *See* TEX. R. CIV. P. 193.1 (requiring a party to make "a complete response" to written discovery requests).

Schindler contests the discovery and sanctions orders on several grounds, including that the specific documents the court ordered Schindler to produce mid-trial had not expressly been requested pretrial; that Ceasar failed to file a motion to compel pretrial; and that the mid-trial discovery order was burdensome, distracting, and violated the rule that "discovery must be conducted during the [pretrial] discovery period" for Level 2 cases.[39]

The court of appeals concluded that the discovery and sanctions orders were not an abuse of discretion.[40] We agree. We reject Schindler's complaint about the trial court's requiring discovery during trial because "[t]he court may modify a discovery control plan at any time and must do so when the interest of justice requires."[41] The record reflects that the trial court was within its discretion in determining that justice required Schindler to produce the policy manual and missing work orders despite the trial's having commenced.

We likewise reject Schindler's challenge to the court's $25,000 sanctions order. Any sanctions order must be "just", which we "measure[] by two standards."[42] "First, a direct relationship must exist

---

[39] *See* TEX. R. CIV. P. 190.3(b)(1)(B) ("All discovery must be conducted during the discovery period, which begins when the first initial disclosures are due and continues until[] . . . the earlier of (i) 30 days before the date set for trial, or (ii) nine months after the first initial disclosures are due.").

[40] 666 S.W.3d at 56, 59; *see Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004) ("A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard.").

[41] TEX. R. CIV. P. 190.5.

[42] *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

between the offensive conduct and the sanction imposed", which requires the court to "attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both."[43] "Second, just sanctions must not be excessive."[44] "A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes", and "courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance."[45] The record reflects that the court carefully adhered to these standards. The court determined that the fault lay with Schindler and not its counsel. And it imposed a far lighter sanction than Ceasar had requested, while reasoning that anything less than $25,000 would be ineffective under the circumstances.

We affirm the part of the court of appeals' judgment relating to this discovery sanction.

### B

Schindler challenges (1) the trial court's exclusion of evidence that three years before the elevator accident, Ceasar applied for federal Social Security Disability benefits and his application was denied; and (2) the court's exclusion of evidence that Ceasar had filed a personal-injury lawsuit for injuries to his neck and back caused by a car accident in 2014. With respect to each ruling, the court of appeals concluded that the trial court did not abuse its discretion or that any error was

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

17

harmless.[46] We agree.

Schindler argues that Ceasar's federal benefits application is relevant to demonstrate that Ceasar claimed to have neck and back injuries years before the elevator incident. The trial court concluded that the application lacked probative value and that its admission would be unduly prejudicial.[47] But while excluding the application itself, the court allowed Schindler to cross-examine Ceasar on statements made in the application. Ceasar testified to having received treatment for back pain prior to the elevator accident. Ceasar's treating neurosurgeon also testified that Ceasar had been "very open" with him about back problems that predated the elevator accident. Finally, there are many reasons why an application for disability benefits might be denied; the mere fact of the application's denial is not probative of Ceasar's credibility.

Schindler also argues that the lawsuit arising from Ceasar's 2014 car accident demonstrates that Ceasar's neck and back injuries occurred before the elevator accident. The court allowed Schindler to examine Ceasar about any injuries resulting from a prior car accident but reasoned that "whether or not the plaintiff had initiated legal proceedings or had filed the lawsuit or had to seek legal redress in regards to that purported injury, ultimately, that is not very relevant . . . absent a specific and particularized showing of relevance." These rulings were within the trial court's discretion.

---

[46] *See* 666 S.W.3d at 50-51.

[47] TEX. R. EVID. 401-403.

18

Schindler's final challenge is to the court's refusal to instruct the jury on spoliation despite Ceasar's having deleted a Facebook live video that he made while trapped in the elevator. Ceasar broadcast live on Facebook while he was trapped in the elevator, but he turned the video off when he exited. Ceasar testified that he recorded the video "to let people know this is where [he was]" because he was "scared" that the elevator "was going to drop". He further testified that the video showed him "screaming for help", "knocking on the door", and "kicking on the door". Ceasar testified that he deleted the video the day after the accident because he "just didn't enjoy . . . the way it made [him] feel" and because it caused him to "reliv[e] the moment . . . again." Finally, Ceasar testified that if he had known he would be filing a lawsuit, he would have kept the video to "show[] everybody."

The Eleganté's on-duty manager, Elizabeth Pearson, testified that she saw the video and that Ceasar did not appear to be injured but that he did appear agitated and was kicking the elevator door to try and open it. Schindler requested the following jury instruction, which the court declined to include:

> Plaintiff, Darren Ceasar, destroyed/failed to preserve his Facebook Live video. You must consider that the Facebook Live video would have been unfavorable to the Plaintiff, Darren Ceasar, on the issue of his description of the incident, his injuries, his frame of mind, as well as his credibility.

To impose a remedy for spoliation, "the trial court must

19

determine, as a question of law, whether a party spoliated evidence".[48] The determination requires two findings: "(1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so."[49] "Upon a finding of spoliation, the trial court has broad discretion to impose a [proportionate] remedy . . . ."[50] The court's factual findings and imposition of a remedy, if any, are reviewed for abuse of discretion.[51]

In denying the instruction, the court reasoned that the inclusion of a spoliation instruction requires "an extremely high showing" that the destruction of evidence was "done maliciously or intentionally in order to hinder the opposing party's presentation of the case." The court stated that it "[did not] find" that this was "established from the evidence or from the briefing." The court noted additionally that there were witnesses besides Pearson who had seen the video but that Schindler had never presented their testimony to the jury. The court explained that it would have given Schindler latitude to present that witness testimony and that it would allow Schindler some leeway in closing argument to address the video's deletion.

After reviewing the record, we agree with the court of appeals that the trial court did not abuse its discretion by declining Schindler's request for a spoliation instruction.[52]

---

[48] *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014).

[49] *Id.*

[50] *Id.*

[51] *Id.* at 27.

[52] 666 S.W.3d at 64.

*    *    *    *    *

We affirm the part of the court of appeals' judgment relating to the sanctions imposed on Schindler. We otherwise reverse the court of appeals' judgment, and we remand to the trial court for a new trial.

 

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 16, 2023